Paul Kevin **BREWER**, Plaintiff–Appellant,

v.

**CITY OF NAPA; Napa Police Department; Medlar, Officer; Deputy Sheriff Perry, Defendants–Appellees.**

No. 98–16460.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 13, 2000.

Filed April 25, 2000.

Robert Mann, Donald W. Cook (argued), Los Angeles, California, for the plaintiff-appellant.

Thomas B. Brown, David C. Jones (argued), Napa, California, for the defendants-appellees.

Before: O'SCANNLAIN, RYMER, and W. FLETCHER, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether prior convictions based on nolo contendere pleas can be admitted into evidence for impeachment purposes. We must also determine, in this federal civil rights action alleging excessive force through the City's use of a police dog, whether the district court was required to instruct the jury as to alternatives to the use of force or the existence of probable cause to believe that the plaintiff was armed.

I

On February 2, 1994, Napa police officer Terry R. Medlar was notified over his police radio that a high-speed car chase of a suspect in a stolen automobile had ended in Napa. After the stolen vehicle had crashed, the suspect had fled on foot and was believed to be hiding in a residential backyard. Medlar, accompanied by sheriff's deputy Chris Perry, responded to the address at which the suspect was last seen. In searching for the suspect, Medlar was aided by his trained police dog, "Heros." Before beginning his search, Medlar drew

his handgun and shouted a warning, informing the suspect that if he refused to surrender, a dog capable of biting would be released to locate him.

Medlar released Heros. The dog went down a walkway and indicated the presence of someone or something on the other side of a six-foot high backyard fence. At this point Medlar believed that the suspect had been located. Medlar approached the fence cautiously, gun in hand. Stepping onto some rocks and peering over the fence, Medlar saw Brewer a few feet away, crouching in a dark, narrow space between the backyard fence and a second fence made of bamboo. Medlar did not see a weapon on Brewer's person, but because he could only see Brewer's upper body, he could not tell if Brewer was armed.

At trial, Brewer and Medlar provided divergent accounts of subsequent events. Brewer asserted that Medlar pointed his gun at him and ordered him to stand up and put his hands in the air. Brewer testified that as he began to rise and interlace his fingers behind his head, the dog attacked. By contrast, Medlar testified that he did not order Brewer to stand up because the two men were already in dangerously close proximity. More important, Medlar testified that although Brewer raised his hands initially, he then "started slowly dropping them back down in front." According to Medlar, this action caused him to fear that Brewer might be trying to reach for a weapon, and he therefore ordered Heros to bite.

Heros bit Brewer on his left ankle or lower leg, his right upper leg, his left hand, and his face. While the dog was still biting him, Brewer tried to climb over the backyard fence. As Brewer attempted to surmount the fence, Perry grabbed him. Once Perry had established control over Brewer, Medlar "ordered the dog off," and Heros released. Brewer was handcuffed and taken into custody; he was treated for

his injuries at a nearby hospital and released the same day.

Brewer brought suit under 42 U.S.C. § 1983 against some ten defendants, including the City of Napa, Medlar, and even Heros.[1] A four-day jury trial took place. When Brewer testified at trial, the City sought to impeach him with two prior felony convictions arising out of nolo contendere pleas. Over Brewer's objection, the district court ruled that evidence of the convictions could be admitted for impeachment purposes under Federal Rule of Evidence 609.

Brewer submitted the following proposed jury instructions to the district court: (1) "[i]n determining the reasonableness of the officer's use of force, you may consider whether or not alternative courses of action were available to the officer"; and (2) "[y]ou are instructed as a matter of law that the officers did not have probable cause to believe plaintiff was armed." The district court declined to give either instruction.

The case went to the jury, which returned a verdict in favor of the City of Napa. The district court entered judgment pursuant to the jury verdict. Brewer filed this timely appeal, challenging, *inter alia*, the denial of his proposed jury instructions and the admission of his prior convictions for impeachment purposes.[2]

## II

Brewer argues that evidence of his two prior convictions based on no contest pleas was improperly admitted for impeachment purposes. He relies upon Federal Rule of Evidence 410, "Inadmissibility of Pleas, Plea Discussions, and Related Statements," which provides that "evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions: ... (2) a plea of nolo contendere...."

---

1. According to Brewer's complaint, "[t]his K-9 [Heros] is also a member of the Napa police dept. and has a badge like any other officer on the police force."

2. We address Brewer's remaining contentions in a memorandum disposition filed concurrently with this opinion.

In admitting evidence of Brewer's prior felony convictions, the district court relied not on Rule 410 but on Rule 609. Rule 609, "Impeachment by Evidence of Conviction of Crime," provides that "[f]or the purpose of attacking the credibility of a witness," "evidence that an accused has been convicted of [a felony] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." Fed.R.Evid. 609(a).

The issue presented in this appeal is whether evidence of a conviction based on a no contest plea can be admitted for impeachment purposes under Rule 609. We conclude that such evidence is admissible. Rule 410 by its terms prohibits only evidence of *pleas* (including no contest pleas), insofar as pleas constitute statements or admissions. Rule 609, by contrast, permits admission for impeachment purposes of evidence of *convictions*. The plain language of the Federal Rules of Evidence thus supports the decision of the district court in this case.

In reaching this conclusion, we draw support from decisions of our sister circuits. The two circuits that have addressed the question have held that felony convictions based on pleas in which the defendant did not admit guilt can be admitted under Rule 609. *See United States v. Williams*, 642 F.2d 136, 138–40 (5th Cir. Unit B 1981) (holding "nolo convictions" admissible for impeachment purposes under Rule 609); *United States v. Lipscomb*, 702 F.2d 1049, 1070 (D.C.Cir.1983) (en banc) ("We hold therefore that an [*N.C. v.]Alford*[, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162] plea, like a nolo plea, does not preclude subsequent use of a conviction under Rule 609."); *see also United States v. Sonny Mitchell Ctr.*, 934 F.2d 77 (5th Cir.1991) (per curiam) (following

*Williams* and concluding that the Fifth Circuit's earlier rule prohibiting impeachment based on nolo contendere convictions did not survive adoption of the Federal Rules of Evidence).

The Fifth and D.C. Circuits reached their conclusions based on several factors. First, they relied upon the plain language of Rule 609, which "does not distinguish between convictions resulting from a guilty verdict or plea and those resulting from a plea of nolo contendere," *Williams*, 642 F.2d at 138. Second, they looked to the legislative history of Rule 609, which shows that an exception to Rule 609 for nolo convictions was considered by the Advisory Committee but ultimately rejected. *See Williams*, 642 F.2d at 138–39; *Lipscomb*, 702 F.2d at 1070 ("The exception for nolo pleas was deleted from the Advisory Committee's final draft and did not reappear. We must presume that Congress knew about and approved the deletion."); *Sonny Mitchell Ctr.*, 934 F.2d at 79. Finally, both courts found that the policy considerations underlying Rule 609 and Rule 410 did not support making an exception to Rule 609 for convictions arising out of no contest pleas. *See Williams*, 642 F.2d at 139–40; *Lipscomb*, 702 F.2d at 1070.

We find the reasoning of these decisions persuasive. We therefore join the Fifth and D.C. Circuits and hold that evidence of felony convictions based on nolo contendere pleas can be admitted for impeachment purposes under Federal Rule of Evidence 609.

### III

Brewer also contends that the district court committed prejudicial error in refusing to give his proposed jury instructions regarding alternatives and probable cause.[3] We disagree.

3. The City argues that Brewer failed to preserve for appeal his jury instruction objections. Under Federal Rule of Civil Procedure 51, "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." As the City correctly observes, we have interpreted Rule 51 quite strictly. *See, e.g., Grosvenor Properties Ltd. v. Southmark Corp.*, 896 F.2d 1149, 1152 (9th Cir.1990). For purposes of this appeal, however, we will

■ "Jury instructions must be formulated so that they fairly and adequately cover the issues presented, correctly state the law, and are not misleading." *Chuman v. Wright,* 76 F.3d 292, 294 (9th Cir. 1996). In reviewing a challenge to instructions, we must bear in mind that "[b]ecause the district court has substantial latitude in tailoring jury instructions ... the formulation of those instructions [is reviewed] for abuse of discretion." *Gilbrook v. City of Westminster,* 177 F.3d 839, 860 (9th Cir.1999).

## A

■ Brewer argues that the jury should have been explicitly instructed to consider "alternative courses of action" available to the officers in evaluating whether Brewer was the victim of excessive force.[4] While the jury was not instructed in the specific language requested by Brewer, the jury did receive the following instructions: (1) "every person has the right not to be subjected to unreasonable or excessive force while being arrested or detained by a law enforcement officer"; (2) "the use of force to effect an arrest or detention violates the Fourth Amendment if a police officer uses force that is *not reasonably necessary* to the particular circumstances presented"; (3) "in making this determination, you should consider the totality of the circumstances facing the officer at the time he used force"; and (4) "the reasonableness of a particular use of force must be judged objectively from the information available at the time the force was used."

■ As the above quotation from the district court's instructions makes clear, the instructions given "fairly and adequately cover[ed] the issues presented," *Chuman,* 76 F.3d at 294, and provided Brewer with ample room to argue his theory of the case to the jury, i.e., that Medlar and Perry had options available to them other than ordering a police dog to attack. Indeed, we have previously upheld as adequate the use of fairly general reasonableness/"totality of the circumstances" instructions in an excessive force case, despite the plaintiff's request for more detailed instructions addressing the specific factors to be considered in the reasonableness calculus. *See Fikes v. Cleghorn,* 47 F.3d 1011, 1014 (9th Cir.1995) ("This instruction complies with [*Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989),] by focusing on the totality of the circumstances. Fikes was free to argue the three factors [mentioned specifically in *Graham* ] as well as others to the jury."). Because "[i]t is not error to reject a theory-of-the-case instruction if the other instructions in their entirety cover the defense theory," *United States v. Lawrence,* 189 F.3d 838, 843 (9th Cir.1999) (citation omitted), the district court did not abuse its discretion in declining to give Brewer's proposed instruction regarding alternatives.

## B

■ Brewer contends that the jury should have been instructed that "the officers [who arrested Brewer] did not have probable cause to believe plaintiff was armed." This claim lacks merit; the legal issue of whether Medlar and Perry had probable cause to believe Brewer was armed was not the issue before the jury. In *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), the Supreme Court held that deadly force "may not be used unless it is necessary to prevent the escape [of a suspected felon] and the officer has *probable cause* to believe

---

assume that Brewer adequately preserved his objections.

4. We will assume for the sake of argument that Brewer's proposed instruction constitutes a correct statement of Ninth Circuit law, although we harbor some doubts on this point. While some of our decisions lend support to

Brewer's instruction, others point in the opposite direction. Compare *Brower v. County of Inyo,* 884 F.2d 1316, 1318 (9th Cir.1989), and *Hopkins v. Andaya,* 958 F.2d 881, 887 (9th Cir.1992), with *Scott v. Henrich,* 39 F.3d 912, 915 (9th Cir.1994), and *Forrester v. City of San Diego,* 25 F.3d 804, 807 (9th Cir.1994).

that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Id.* at 3, 105 S.Ct. 1694 (emphasis added). In *Graham*, a non-deadly force case, the Court stated that assessing the Fourth Amendment reasonableness of a use of force "requires careful attention to the facts and circumstances of each particular case, whether the suspect *poses an immediate threat* to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 397, 109 S.Ct. 1865 (emphasis added). As *Garner* and *Graham* make clear, the existence or absence of probable cause lacks relevance outside the deadly force context described by *Garner.*

Under our precedents, the *Garner* analysis with respect to deadly force generally does not apply to the use of police dogs. *See, e.g., Vera Cruz v. Escondido*, 139 F.3d 659, 661 (9th Cir.1997); *Fikes*, 47 F.3d at 1014–15. In this case, then, the relevant inquiry for the jury was whether Brewer might have posed "an immediate threat to the safety of the officers or others" under *Graham*, 490 U.S. at 397, 109 S.Ct. 1865; the existence of probable cause, a more specific and demanding standard, was simply not relevant.

Brewer argues that *Garner*'s probable cause requirement applies broadly and outside the deadly force context. What Brewer fails to recognize is that (1) the plain language of *Garner* makes clear that its holding requiring probable cause applies specifically to the use of deadly force, *see* 471 U.S. at 3, 11–12, 105 S.Ct. 1694; and (2) we have correctly interpreted *Garner* as "establish[ing] a *special rule* concerning deadly force." *Vera Cruz*, 139 F.3d at 661 (emphasis added); *see also Quintanilla v. City of Downey*, 84 F.3d 353, 357 (9th Cir.1996) ("The *Garner* standard, if not subsumed into the more general *Graham* formula, ... can apply only when deadly force has been used."). Indeed, if *Garner* were not so limited, our decision in *Vera Cruz* delineating the scope

of the *Garner* rule would have been unnecessary. In short, Brewer's allegation of error in the failure to give his proposed probable cause instruction is devoid of merit.

IV

Evidence of Brewer's two prior felony convictions was properly admitted for impeachment purposes, and the jury instructions given by the district court were well within its substantial discretion. Accordingly, the district court's judgment on the jury verdict in favor of the City was in all respects proper.

AFFIRMED.