**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

H. N. DANG,

*Plaintiff-Appellant,*

v.

GILBERT CROSS,

*Defendant-Appellee.*

Nos. 03-55403
03-56360

D.C. No.
CV-00-13001-GAF

OPINION

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued and Submitted
December 8, 2004—Pasadena, California

Filed August 22, 2005

Before: Betty B. Fletcher, John T. Noonan, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

11047

**COUNSEL**

Stephen Yagman, Kathryn Bloomfield, Marion Yagman, Joseph Reichman, Yagman & Yagman & Reichman & Bloomfield, Venice Beach, California, for the plaintiff-appellant.

Wilmont A. Odom, Cal P. Saunders, Office of City Attorney, Compton, California, for the defendant-appellee.

---

**OPINION**

PAEZ, Circuit Judge:

In this civil rights action, under 42 U.S.C. § 1983, Plaintiff H.N. Dang prevailed in a jury trial on his excessive force claim against Officer Gilbert Cross of the City of Compton Police Department and was awarded compensatory damages, but not punitive damages. We consider Dang's consolidated appeals. Dang first challenges the district court's refusal to instruct the jury that oppressive conduct can serve as a predicate for punitive damages under § 1983. Second, Dang contends that the district court erred in its calculation of reasonable attorney's fees and costs under 42 U.S.C. § 1988.

We hold that the district court erred in failing to instruct the jury that it could award punitive damages if it found that Cross acted in an oppressive manner and we conclude that this error was not harmless. Second, we hold that the district court did not abuse its discretion in determining the reasonable hourly rate it applied in calculating the fee award. We vacate the fee award and remand, however, for further consideration of the reasonable hours expended in light of the proper legal standard and for reimbursement of the cost of recording an abstract of judgment.

I.

Plaintiff H.N. Dang was the shop manager of the Compton Jewelry Exchange, which Compton police officers suspected of operating an unlicensed pawn shop. On December 17, 1999, Compton police officers executed an undercover investigation of the Jewelry Exchange's alleged pawn shop activities. An undercover officer, Betty Jones, entered the store to attempt to pawn a ring. After Dang agreed to take the ring in exchange for $100, Jones left the store and notified Officer Gilbert Cross, who was waiting outside the store with two other officers, that she had successfully pawned the ring.

Shortly thereafter, three officers, Cross, Sergeant Preston Harris, and Officer James Lewis, entered the store. When the officers entered, Dang was in the office, which was separated from the salesroom where the officers stood by a bulletproof window and a steel security door. After Dang opened the security door at the officers' request, Harris and Cross entered the office. Lewis remained by the front door. The officers informed Dang that he was under arrest.[1] Without patting down or searching Dang, the officers handcuffed Dang and requested that he produce the pawned ring. Dang informed the officers that the ring was in a safe. Cross then instructed Dang to open the safe. After the officers removed the handcuffs, Dang bent down and proceeded to open the safe, which took several attempts. After opening the safe, Dang reached inside. As soon as he did so, however, Cross yelled at him to stop and Harris pulled Dang away from the safe. Dang leaned forward again to reach into the safe and Harris pulled Dang back, knocking him to the floor.[2] As Dang was pushed to the floor,

---

[1]When Dang was told he was under arrest, he asked the officers if he could call his girlfriend. The officers refused. Dang also turned on the camcorder in order to film the events. Dang testified that Officer Cross turned the camcorder off and removed it after Dang was handcuffed.

[2]Dang testified that he reached into the safe to place the rings that he was wearing in the safe for safekeeping. Cross and Harris testified that Harris pulled Dang back because Dang grabbed the allegedly pawned ring and they feared that he was going to destroy the slip attached to the ring.

he was holding the allegedly pawned ring, which Cross attempted to retrieve.

A struggle ensued between Dang and the three officers, as Lewis had joined the other two officers in the office at this point. During the struggle, Cross struck Dang in the groin area in order to incapacitate him.[3] Although Cross testified that he struck Dang in the groin with his fist, Dang testified that Cross kicked him in the genitalia. After striking Dang in the groin area, Cross punched Dang in the face. Dang also testified that the officers stepped on his head and his hand. The officers finally subdued Dang when Harris put Dang into a carotid restraint (a chokehold) and handcuffed him again.

The police officers took Dang to the Compton Police Department and, while waiting, Dang lost consciousness. The officers then took Dang to the hospital for medical attention. Dang later sought private medical care because of the bruises and pain in his chest, shoulders, neck, arm, hand, mouth, and groin, and because there was blood in his urine.

Following the events of December 17, 1999, Dang filed suit in the Central District of California against several City of Compton officials and police officers alleging violations of his Fourth Amendment rights under 42 U.S.C. § 1983. Before the defendants filed motions for summary judgment, Dang voluntarily dismissed the claims against all defendants except Cross and Hourie Taylor, the Chief of Police for the Compton Police Department. Dang also voluntarily dismissed his conspiracy and Fourteenth Amendment claims against these remaining defendants.

Dang alleged that Cross, in his individual capacity, violated Dang's Fourth Amendment rights by executing an unlawful

---

[3]Cross testified that he struck Dang because Officer Lewis yelled that Dang was reaching for Lewis's gun. Dang testified, however, that he never reached for Lewis's gun.

entry, illegal search and seizure, false arrest, and by using excessive force. Dang sued Taylor in his individual and official capacities alleging supervisory liability for the constitutional violations and alleging that the violations arose from the customs, policies, and practices of the Compton Police Department. Cross and Taylor filed summary judgment motions on all claims. The district court concluded that disputed material issues of fact regarding the extent of force Cross used against Dang precluded summary judgment on Dang's excessive force claim against Cross. The court, however, granted summary judgment on all other remaining claims against Cross and Taylor.

At trial, Dang as well as Cross, Lewis, and Harris testified. The jury found Cross liable for excessive force and awarded Dang $18,000 in compensatory damages. Before the punitive damages phase of the trial, Dang requested a punitive damages jury instruction that included a clause stating that an act "oppressively done" could be a predicate for an award of punitive damages. The district court rejected this instruction, concluding that it was an inaccurate statement of the law, and instead instructed the jury in accordance with Ninth Circuit Model Civil Jury Instruction 7.5 (2002). In support of his claim for punitive damages, the court allowed Dang to present additional evidence. Dang called Cross as a witness and questioned him about his remorse for the events on December 17, 1999. After argument and deliberations, the jury declined to award punitive damages and returned a verdict in favor of Cross.

At the conclusion of the litigation, Dang filed a motion for an award of reasonable attorney's fees under 42 U.S.C. § 1988. Dang sought $250,000 in fees and $2,030 in costs. Cross opposed the motion. The district court awarded $134,000 in attorney's fees. The court arrived at this amount by reducing the hours included in Dang's requested fee award by 25 percent and by reducing counsel's hourly rate from $550 to $400 per hour. The court also awarded Dang $908.25

in costs, but denied his request for reimbursement of $18.50 for the cost of obtaining and recording an abstract of judgment. Dang timely appealed the judgment and the order granting attorney's fees.

## II.

" 'The standard of review on appeal for an alleged error in jury instructions depends on the nature of the claimed error.' " *Phillips v. United States I.R.S.*, 73 F.3d 939, 941 (9th Cir. 1996) (quoting *Oglesby v. S. Pac. Transp. Co.*, 6 F.3d 603, 606 (9th Cir. 1993)). "We review a district court's formulation of jury instructions in a civil case for abuse of discretion." *White v. Ford Motor Co.*, 312 F.3d 998, 1012 (9th Cir. 2002). "We review de novo whether the instructions misstated the law." *Fireman's Fund Ins. Cos. v. Alaskan Pride P'ship*, 106 F.3d 1465, 1469 (9th Cir. 1997). Here, we review de novo because Dang challenges the court's instruction as an incorrect statement of the law and the court rejected Dang's proposed instruction as contrary to the law of this circuit. *See Galdamez v. Potter*, ___ F.3d ___, 2005 WL 1653618, at *3 (9th Cir. July 15, 2005).

We have stressed that "[j]ury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading." *White*, 312 F.3d at 1012. Further, "[a] party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). We also have noted that the "[u]se of a model jury instruction does not preclude a finding of error." *United States v. Warren*, 984 F.2d 325, 328 (9th Cir. 1993). If, however, the error in the jury instruction is harmless, it does not warrant reversal. *Tritchler v. County of Lake*, 358 F.3d 1150, 1154 (9th Cir. 2004). "In evaluating jury instructions, prejudicial error results when, looking to the instructions as a whole, the substance of the applicable law was [not] fairly and correctly covered." *Swinton v. Potomac Corp.*, 270 F.3d 794, 802 (9th

Cir. 2001) (alteration in original) (internal quotation marks and citations omitted).

The issue here is whether the district court erred in rejecting Dang's proposed punitive damages jury instruction and in giving an instruction that did not instruct the jury that it could award punitive damages on the basis of Cross's allegedly oppressive conduct. Dang requested that the court instruct the jury as follows, in relevant part:

> If the jury should find from a preponderance of the evidence that a plaintiff is entitled to a verdict for nominal or compensatory damages; and should further find that an act or omission of a defendant, which legally caused injury to a plaintiff, was callously or, maliciously, or wantonly, or *oppressively* done, then the jury may, add to an award of nominal or compensatory damages, such amount as the jury shall find to be proper, as punitive damages.

> An act or a failure to act is 'maliciously' done, if promoted or accompanied by ill will, or spite, or grudge, either toward the injured person individually, or toward a person in one of [sic] more groups or categories of which the injured person is a member. An act or a failure to act is 'wantonly' done, if done in reckless or callous disregard or, or [sic] indifference to, the rights of one or more persons, including the injured person.

> *An act or a failure to act is 'oppressively' done, if done in a way or manner which injures, or damages, or otherwise violates the rights of another person with unnecessary harshness or severity, as by misuse or abuse of authority or power, or by taking advantage of some weakness, or disability, or misfortune of another person.*

(emphasis added). Dang's counsel further specified that he would not object to an alternative instruction as long as it included the concept of oppressive conduct as a predicate for punitive damages because that was the basis for Dang's punitive damages argument.[4] The district court concluded, however, that the provision that allowed the jury to award punitive damages for an act "oppressively done" was an inaccurate statement of the law. Thus, the court rejected the proposed instruction and instead, relying on Model Instruction 7.5, instructed the jury as follows, in relevant part:

> The plaintiff has the burden of proving that punitive damages should be awarded, and the amount, by a preponderance of the evidence. You may award punitive damages only if you find that defendant's conduct was malicious, or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring another. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety, rights, or the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law.

We hold that the district court erred in concluding that oppressive conduct is not a proper predicate for punitive damages. We further hold that the court's omission of the oppressive acts provision rendered the jury instruction incomplete. "[L]ooking to the instructions as a whole, the substance of the applicable law was [not] fairly and correctly covered." *Swinton*, 270 F.3d at 802 (alteration in original) (internal quotation marks and citations omitted). Because punitive damages may be awarded for conduct that was oppressive, and because the record "provided an evidentiary basis for such an instruction,"

---

[4]It is not disputed that Dang properly objected to the court's punitive damages instruction pursuant to Fed. R. Civ. P. 51(c).

the district court erred "[b]y failing to instruct the jury on [the oppressive acts] concept." *See Gizoni v. Southwest Marine Inc.*, 56 F.3d 1138, 1141 (9th Cir. 1995).

A.

[1] Section 1983 was "intended to 'create a species of tort liability' in favor of persons deprived of federally secured rights." *Smith v. Wade*, 461 U.S. 30, 34 (1983) (quoting *Carey v. Piphus*, 435 U.S. 247, 253 (1978)). Further, the common law of torts governs the recoverable damages for liability under § 1983. *Id.* Accordingly, when the Supreme Court determined the requisite mental state and conduct for a punitive damages award under § 1983, the Court looked to applicable tort law concepts. *See id.* at 38.

[2] In *Smith v. Wade*, the Court considered whether punitive damages could be awarded only for intentionally malicious conduct or whether the district court properly instructed the jury that it could award punitive damages "if the conduct of one or more of the defendants is shown to be a reckless or callous disregard of, or indifference to, the rights or safety of others." *Id.* at 33. Focusing on the standards for punitive damages at the time of the enactment of § 1983, the Court concluded that federal and state courts agreed that punitive damage awards "did not require a showing of actual malicious intent; they permitted punitive awards on variously stated standards of negligence, recklessness, or other culpable conduct short of actual malicious intent." *Id.* at 45. The Court noted cases applying various formulations of the standards for punitive damages awards that existed at the time Congress enacted § 1983, including "malicious or wanton misconduct or culpable neglect," *Welch v. Durand*, 36 Conn. 182, 185 (1869), conduct done "wantonly, or oppressively," *Cowen v. Winters*, 96 F. 929, 935 (6th Cir. 1899) (citations omitted); *Berry v. Fletcher*, 3 F.Cas. 286, 288 (C.C.Mo. 1870); *Fotheringham v. Adams Exp. Co.*, 36 F. 252, 253 (E.D. Mo. 1888), "gross negligence," *Frink & Co. v. Coe*, 4 Greene 555, 1854

WL 228, at *4 (Iowa 1854); *Maysville & L.R. Co. v. Herrick*, 76 Ky. 122, 127 (1877), "reckless negligence," *Florida Ry. & Nav. Co. v. Webster*, 5 So. 714, 719 (Fla. 1889), and "reckless disregard of the rights of others," *Jacobus v. Congregation of Children of Israel*, 33 S.E. 853, 855 (Ga. 1899). *See Smith*, 461 U.S. at 45 n.12. In addition, the Court noted that in modern tort law, courts continue to apply the same standards for punitive damages awards. *Id.* at 46.

**[3]** Further, the Court concluded that there is "no reason why a person whose federally guaranteed rights have been violated should be granted a more restrictive remedy than a person asserting an ordinary tort cause of action." *Id.* at 48-49.[5] The Court thus concluded "that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Id.* at 56.

In light of the Supreme Court's holding in *Smith*, we have recognized that "[i]t is well-established that a 'jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others.' " *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993) (quoting *Davis v. Mason County*, 927 F.2d 1473, 1485 (9th Cir. 1991)). Accordingly, the Ninth Circuit Model Civil Jury Instruction 7.5, which addresses punitive damages in federal civil cases, provides:

> If you find for the plaintiff, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish a defendant and to deter a defendant and others from committing similar acts in the future.

---

[5]The Court also rejected the defendant's argument that the threshold for punitive damages must always be higher than the standard for compensatory damages. *Smith*, 461 U.S. at 53.

> The plaintiff has the burden of proving that punitive damages should be awarded, and the amount, by a preponderance of the evidence. *You may award punitive damages only if you find that defendant's conduct was malicious, or in reckless disregard of the plaintiff's rights.* Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring another. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety, rights, or the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law.

Model Civ. Jury Instr. 9th Cir. 7.5 (2004) (emphasis added).

This statement of the law of punitive damages is incomplete, however. The standard for punitive damages under § 1983 mirrors the standard for punitive damages under common law tort cases. *See Smith*, 461 U.S. at 49. As the cases cited by the Court in *Smith* made clear, malicious, wanton, or oppressive acts or omissions are within the boundaries of traditional tort standards for assessing punitive damages and foster "deterrence and punishment over and above that provided by compensatory awards." *Id.* at 54; *see id.* at 45 n.12, 46 n.13. Such acts are therefore all proper predicates for punitive damages under § 1983.

**[4]** Although we have not explicitly held that punitive damages may be awarded in federal civil rights cases for oppressive conduct, we have frequently operated under the assumption that such an instruction is proper. For instance, in *Fountila v. Carter*, 571 F.2d 487 (9th Cir. 1978), a discrimination case under the Fair Housing Act, we reviewed an instruction that provided in part, "If you find for the plaintiff and find, from a preponderance of the evidence, that the acts of the defendant were maliciously or wantonly or *oppressively* done, then you may award the plaintiffs punitive damages in

addition to actual damages or in addition to nominal damages such as you find." *Id*. at 492 (emphasis added). We determined that the district court's failure to inform the jury of the purpose of punitive damages was prejudicial to the defendant; however, we did not address whether the inclusion of the oppressive acts clause was proper or required. *Id*. at 494.

Similarly, in *Ward v. City of San Jose*, 967 F.2d 280 (9th Cir. 1991), a § 1983 action, we affirmed the district court's ruling that the "evidence could not support a finding that the officers acted 'maliciously, wantonly, or oppressively,' " without addressing whether this instruction was an appropriate legal standard for punitive damages. *Id*. at 286. In addition, in *Price v. Kramer*, 200 F.3d 1237 (9th Cir. 2000), in which the plaintiff alleged illegal search and seizure and excessive force under § 1983, we concluded that evidence of the defendant police officer's racial bias was relevant, in part, because it went to "proving the defendant's conduct was 'malicious, wanton or oppressive or in reckless disregard of the plaintiffs' rights' which, according to the jury instructions, was necessary to the receipt of punitive damages." *Id*. at 1251. Again we did not directly address the propriety of this instruction. *See also Larez v. City of Los Angeles*, 946 F.2d 630, 639 (9th Cir. 1991) (holding that defendants' challenge to a punitive damages jury instruction was foreclosed because the issue was not raised at trial but noting that the instruction given, which included "maliciously, wantonly, or oppressively," were within the standard set by Supreme Court in *Smith v. Wade*); *Gregory v. Thompson*, 500 F.2d 59, 65 (9th Cir. 1974) (rejecting the defendant's challenge to a district court's failure to instruct the jury on a good faith defense, while upholding a jury instruction that allowed the jury to award punitive damages if it "found [defendant] to have acted 'maliciously or wantonly or oppressively' ").

**[5]** Thus, we now explicitly hold what was implicit in our past decisions. As the Seventh Circuit held in *McKinley v. Trattles,* 732 F.2d 1320 (7th Cir. 1984), we conclude that a

jury instruction that allows for imposition of punitive damages for an act that was "oppressively done" and which caused the plaintiff's injury is "accurate and complete." *See id.* at 1326. In *McKinely*, the district court instructed the jury that it could award punitive damages "[i]f the jury should find from a preponderance of the evidence in the case that the act or omission of the defendants which proximately caused actual injury or damage to the plaintiff was maliciously or wantonly or oppressively done." *Id.* at 1326 n.2. The Seventh Circuit found that "[t]hese jury instructions . . . comply with the Supreme Court's mandate in *Smith v. Wade*." *Id.* at 1326. We agree. This conclusion is also in line with several of our other sister circuits. *See, e.g.*, *Walker v. Norris*, 917 F.2d 1449, 1459 (6th Cir. 1990) (affirming an award of punitive damages in a § 1983 case, concluding that the "maliciously, wantonly, or oppressively done" jury instruction was "as strict as the standard articulated by the Supreme Court in *Smith v. Wade*"); *Garza v. City of Omaha*, 814 F.2d 553, 556 (8th Cir. 1987) ("In a § 1983 action, punitive damages may be awarded where the defendant exhibits oppression, malice, gross negligence, willful or wanton misconduct, or a reckless disregard for the civil rights of the plaintiff."); *Stokes v. Delcambre*, 710 F.2d 1120, 1126 (5th Cir. 1983) (holding, in a § 1983 action, that malicious, wanton, or oppressive acts are within the traditional tort punitive damages standards as required by *Smith v. Wade*).[6] In sum, the district court erred in concluding that

---

[6]In addition to those circuits that have expressly held that such an instruction is proper, several other circuits have implicitly recognized that oppressive conduct is a proper predicate for punitive damages. *See, e.g.*, *Caban-Wheeler v. Elsea*, 71 F.3d 837, 842 (11th Cir. 1996) (affirming an award of punitive damages in a § 1983 action because there was sufficient evidence that the defendants acted "maliciously, wantonly, or oppressively"); *Beardsley v. Webb,* 30 F.3d 524, 531 (4th Cir. 1994) (affirming an award of punitive damages in a § 1983 suit based on evidence that "defendant's acts were malicious or wanton or oppressive or willful"); *Wren v. Spurlock,* 798 F.2d 1313, 1322 (10th Cir. 1986) (affirming an award of punitive damages in § 1983 case based upon the jury's finding that defendants' acts were "maliciously or wantonly, or oppressively done"); *Abraham v. Pekarski*, 728 F.2d 167, 173 (3d Cir. 1984) (holding that evidence supported punitive damages in a § 1983 case because the jury could find that defendants acted with "ill will and oppressively").

oppressive conduct, which was the basis for Dang's theory of punitive damages, is an inaccurate statement of the law.

B.

In light of our conclusion that oppressive conduct is a proper predicate for punitive damages under § 1983, we must consider whether the instructions here adequately covered the concept of oppression. "It is not error to reject a theory-of-the-case instruction if the other instructions in their entirety cover the [case] theory," *Brewer v. City of Napa*, 210 F.3d 1093, 1097 (9th Cir. 2000) (quoting *United States v. Lawrence*, 189 F.3d 838, 843 (9th Cir. 1999)). Here, however, we conclude that the court's punitive damages instruction did not cover Dang's theory that Cross acted oppressively in striking and subduing Dang. Unlike *Brewer*, in which the court concluded that "the instructions given 'fairly and adequately cover[ed] the issues presented,' and provided Brewer with ample room to argue his theory of the case to the jury," *id*., the instructions here did not adequately cover oppressive conduct.

As noted, the court's instruction embodied the text of Ninth Circuit Model Civil Jury Instruction 7.5 (2002). That instruction provided, "You may award punitive damages only if you find that defendant's conduct was malicious, or in reckless disregard of the plaintiff's rights." The instruction further defined malicious: "Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring another." The instruction also stated, "Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety, rights, or the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law."

[6] An act or omission is oppressive, however, "if done in a manner which injures or damages or otherwise violates the rights of another person with unnecessary harshness or sever-

ity as by misuse or abuse of authority or power or by taking advantage of some weakness or disability or the misfortunes of another person." *Fountila*, 571 F.2d at 493; *McKinley*, 732 F.2d at 1326 n.2.[7] We conclude that a defendant's misuse of authority or power or exploitation of a plaintiff's weakness is qualitatively different than a defendant's act that is malicious or in reckless disregard of the plaintiff's rights.

[7] Punitive damages serve to punish the defendant for wrongful conduct and to deter the defendant and others from repeating that wrong. *See Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432 (2001). Awarding punitive damages for oppressive conduct that was the cause of the plaintiff's injury deters and punishes the defendant for conduct that is not necessarily encompassed by malicious or reckless conduct. When a jury is instructed that it may award punitive damages for oppressive acts, the jury must consider the relative positions of power and authority between the parties and determine whether the defendant misused his power or authority or abused the plaintiff's weakness in the course of the wrongful conduct. This determination is not identical to the jury's consideration of a defendant's malicious acts or reckless disregard of the plaintiff's rights. In some situations the jury may determine that the defendant's conduct was malicious or reckless and also oppressive. Nonetheless,

---

[7]We agree that this is the proper legal definition of "oppressive." It is also consistent with the common definition of oppression or oppressive. *See* Webster's Third New Int'l Dictionary Unabridged 1584 (1993) (defining "oppressive" as "unreasonably burdensome; unjustly severe, rigorous, or harsh; constituting oppression" and further defining "oppression" as "unjust or cruel exercise of authority or power esp. by the imposition of burdens; the unlawful, excessive or corrupt exercise of power other than by extortion by any public officer so as to harm anyone in his rights, person, or property while purporting to act under color of governmental authority"); Black's Law Dictionary 1127 (8th ed. 2004) (defining "oppression" as "1. The act or an instance of unjustly exercising authority or power. 2. An offense consisting in the abuse of discretionary authority by a public officer who has an improper motive, as a result of which a person is injured.")

oppressive conduct is sufficiently distinct to warrant a separate instruction.

Indeed, several of our sister circuits have considered reckless or wanton conduct,[8] malicious conduct, and oppressive conduct as separate and distinct bases for an award of punitive damages under § 1983. *See, e.g.*, *Walker*, 917 F.2d at 1459; *Garza*, 814 F.2d at 556; *Stokes*, 710 F.2d at 1126; *see also Anderson v. United Fin. Co.*, 666 F.2d 1274, 1278 (9th Cir. 1982) (holding that punitive damages may be awarded under the Equal Credit Opportunity Act if "the creditor wantonly, maliciously or oppressively discriminates against an applicant," or if "the creditor acts in reckless disregard of the requirements of the law"). In addition, such a distinction was drawn in assessing punitive damages at the time of the enactment of § 1983. *See, e.g.*, *Day v. Woodworth*, 54 U.S. 363, 371 (1851) (holding that exemplary damages depend upon the degree of "malice, wantonness, oppression, or outrage of the defendant's conduct"); *Cowen*, 96 F. at 935 ("[T]he jury . . . may award exemplary, punitive, or vindictive damages . . . if the defendant has acted wantonly, or oppressively, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations."); *Berry*, 3 F.Cas. at 288 ("To authorize the giving of exemplary or vindictive damages, either malice, violence, oppression, or wanton recklessness must mingle in the controversy."); *Fotheringham*, 36 F. at 253 ("Punitive damages may be awarded when a wrongful act is done willfully, in a wanton or oppressive manner, or even when it is done recklessly.").[9]

---

[8]Wanton misconduct is an act or omission "in reckless disregard of another's rights, coupled with the knowledge that injury will probably result." Black's Law Dictionary 1020 (8th ed. 2004); *see also McKinley*, 732 F.2d at 1326 ("An act or a failure to act is wantonly done if done in reckless disregard or callous disregard of or indifference to the rights of one or more persons including the injured person.").

[9]*See also Philadelphia Traction Co. v. Orbann*, 12 A. 816, 821 (Pa. 1888) (holding exemplary damages appropriate if defendant's conduct was

**[8]** Thus, when the plaintiff's theory for awarding punitive damages is based upon an alleged act of oppression and there is a foundation in the evidence for an instruction on this theory, the district court must give such an instruction. *See Jones*, 297 F.3d at 934. "[F]ailure to give an instruction on a party's theory of the case is reversible error if 'the theory is legally sound and evidence in the case makes it applicable.' " *Smith v. Sumner*, 994 F.2d 1401, 1404 (9th Cir. 1993) (quoting *United States v. Scott*, 789 F.2d 795, 797 (9th Cir. 1986)). Here, the evidentiary record provides a foundation for the theory of punitive damages based on oppressive conduct. The jury reasonably could have concluded that Cross's use of force in the course of Dang's arrest took advantage of Cross's authority and power and Dang's relative weakness. Indeed, the record reflects that Dang was positioned close to the floor when the struggle ensued because he was ordered to open the safe and that he was injured during the course of the struggle with the three officers. We therefore conclude that there was a sufficient evidentiary foundation for the oppressive conduct instruction. Thus, the district court failed in its obligation "to give jury instructions on all issues arising from the evidence

---

"willful and wanton, reckless or oppressive"); *Jockers v. Borgman*, 29 Kan. 109, 1883 WL 714, at *8 (1883) ("[E]xemplary damages . . . are not to be awarded unless the conduct of a defendant is willful, wanton, reckless, malicious, oppressive, or otherwise deserving of condemnation beyond the mere actual damage."); *Evans v. St. Louis*, 11 Mo.App. 463, 1882 WL 9697, at *7 (Mo. Ct. App. 1882) ("[I]f the[ jury] should find that the act of the conductor in putting the plaintiff off the train, under the circumstances, was wanton, reckless, or oppressive, they might give exemplary damages."); *Palmer v. Charlotte*, 3 S.C. 580, 1872 WL 4908, at *12 (1872) ("[I]f there were no facts in the case to characterize the conduct of the conductor as malicious, oppressive, or reckless of the rights of the plaintiff, then the submission of the rule of exemplary damages was erroneous."); *Dorsey v. Manlove*, 14 Cal. 553, 556 (1860) ("[W]here the trespass is committed from wanton or malicious motives, or a reckless disregard of the rights of others, or under circumstances of great hardship and oppression, the rule of compensation is not adhered to, and the measure and amount of damages are matters for the jury alone.").

and to present the [plaintiff's] theory of the case." *Glover v. BIC Corp.*, 6 F.3d 1318, 1328 (9th Cir. 1993).

## C.

**[9]** Finally, we must consider whether the error was harmless. "An error in instructing the jury in a civil case requires reversal unless the error is more probably than not harmless." *Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir. 1992). "[W]e presume prejudice where civil trial error is concerned and the burden shifts to the [defendant] to demonstrate 'that it is more probable than not that the jury would have reached the same verdict' had it been properly instructed." *Galdamez,* ___ F.3d. at ___, 2005 WL 1653618, at *7 (quoting *Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005)). Here, Cross simply argues that in light of the court's punitive damages instruction, it is more probable than not that the jury would have reached the same conclusion even if the jury instruction had included oppressive acts. Because this assertion presumes that oppressive conduct is necessarily encompassed within malicious or reckless conduct, it is insufficient to rebut the presumption of prejudice.

**[10]** On this record, we cannot conclude that it is more probable than not that the error was harmless. "[N]othing about this verdict indicates that the result would have been the same without the error." *See Caballero*, 956 F.2d at 207. During the liability and punitive damages phases of trial, the jury concluded that Cross's use of force was unreasonable under the Fourth Amendment but was not malicious or in reckless disregard of Dang's rights. These determinations do not allow us to conclude that the jury also would have concluded that Cross's conduct was not oppressive. *Cf. Benigni v. City of Hemet*, 879 F.2d 473, 480 (9th Cir. 1988) (holding that the district court's failure to instruct the jury on reasonableness was harmless because the jury's award of punitive damages indicated that the jury found the officer's conduct to be worse than unreasonable). Further, as discussed, in light of the evi-

dence of Cross's assertion of power and authority and Dang's position when he was struck, the jury may well have concluded that Cross acted in an oppressive manner. *See Galdamez,* ___ F.3d. at ___, 2005 WL 1653618, at *7. Thus, the error here was not harmless, and we reverse for a new trial on the issue of punitive damages.

## III.

Under 42 U.S.C. § 1988, "the court, in its discretion, may allow the prevailing party [in a § 1983 action], other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988; *Hensley v. Eckerhart*, 461 U.S. 424 (1983). The parties do not dispute that Dang is the prevailing party.[10] Dang contends, however, that the district court abused its discretion in determining the reasonable attorney's fee award and in refusing to reimburse Dang for expenditures made to obtain and record an abstract of judgment.[11]

To determine reasonable attorney's fees under § 1988, "the district court should first determine the lodestar amount by calculating 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.' " *Lytle*, 382 F.3d at 988 (quoting *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987)).[12] The district court may then, in

---

[10]Although we remand for a new trial on punitive damages, we deem it appropriate to address Dang's challenges to the district court's rulings regarding attorney's fees. Even if Dang does not pursue his request for punitive damages on remand, Dang is a prevailing party under § 1988. Dang prevailed at the liability phase of the trial and Cross does not challenge the award of compensatory damages. Ultimately, Dang is entitled to an award of reasonable attorney's fees.

[11]We review an award of attorney's fees under 42 U.S.C. § 1988 for abuse of discretion. *Webb v. Sloan*, 330 F.3d 1158, 1167 n.6 (9th Cir. 2003), *cert. denied*, 124 S. Ct. 1042 (2004). "A district court abuses its discretion if it applies an inaccurate statement of the law, or if it bases its decision on a clearly erroneous finding of fact." *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004).

[12]The district court may exclude from the lodestar amount those hours that were not "reasonably expended." *Hensley*, 461 U.S. at 433. Here, the

its discretion, adjust the lodestar amount after considering other factors that bear on the reasonableness of the fee. *Id.*; *see also Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996) (discussing the *Kerr* factors that bear on reasonableness that may be used to adjust the lodestar amount).

A.

**[11]** "[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Hensley*, 461 U.S. at 440. To determine fees in cases of partial success, such as the action at issue here, "[a] court must consider (1) whether 'the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded,' and (2) whether 'the plaintiff achiev[ed] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.' " *Watson v. County of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002) (quoting *Hensley*, 461 U.S. at 434).

The first step requires the district court to determine whether the successful and unsuccessful claims were unrelated. *Webb*, 330 F.3d at 1168. "[C]laims are *unrelated* if the successful and unsuccessful claims are 'distinctly different' *both* legally *and* factually," *id.* at 1169 (quoting *Schwarz v. Sec'y of Health & Human Serv.*, 73 F.3d 895, 902-03 (9th Cir. 1995)); claims are related, however, if they "involve a common core of facts *or* are based on related legal theories." *Id.* at 1168. At bottom, "the focus is on whether the unsuccessful and successful claims arose out of the same 'course of conduct.' " *Id.* at 1169. If they did not, the hours expended on the unsuccessful claims should not be included in the fee award. *Webb*, 330 F.3d at 1169; *Schwarz*, 73 F.3d at 901.

district court initially reduced the lodestar by fifteen percent because the hours appeared "excessive, unnecessary, or redundant" and were inadequately documented. Dang does not challenge this initial reduction in hours.

If, however, "the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 902-03 (internal quotation marks and citations omitted). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. When "a plaintiff has achieved only partial or limited success, [however,] the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436. Nonetheless, a plaintiff does not need to receive all the relief requested in order to show excellent results warranting the fully compensatory fee. *Id.* at 435 n.11; *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001).

Here, the district court reduced the number of hours by an additional ten percent because the court found "a measurable part of the case activity was directed to matters pertaining to Defendants who were ultimately eliminated from the case through law and motion practice." The district court concluded that "the question to be addressed by the trial court is whether the unsuccessful claims played an important role in the plaintiff's partial success." Pointing to the inclusion of dismissed defendants and claims that "served to increase the amount of unproductive time devoted to this case," the court reduced the attorney's fee award by ten percent.

**[12]** In making this determination, the district court failed to consider whether the claims against the dismissed defendants and the unsuccessful claims of false arrest, illegal entry, and unreasonable search and seizure against Cross were related to the successful excessive force claim. We therefore vacate the fee award and remand to the district court for a determination of whether the unsuccessful claims were related to Dang's successful excessive force claim against Cross and to determine the reasonable hours expended applying the correct standard.

## B.

**[13]** Dang also challenges the $400 hourly rate approved by the court. " '[R]easonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community," *Blum v. Stenson*, 465 U.S. 886, 895 (1984), taking into consideration "the experience, skill, and reputation of the attorney." *Schwarz*, 73 F.3d at 906 (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *amended*, 808 F.2d 1373 (9th Cir. 1987)).

**[14]** "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11. Here, the district court considered the evidence produced by the parties, including fee rates of other attorneys in similar practices, awards in comparable cases, counsel's experience and reputation level, and the market rates, as well as two additional *Kerr* factors: the novelty/difficulty of the issues and the preclusion of other work. *See Morales*, 96 F.3d at 364. In light of the evidentiary record and the factors that bear on the reasonableness of a fee award, the district court concluded that $400 per hour, rather than the requested fee of $550 per hour, was reasonable. This determination was not an abuse of discretion.[13]

## C.

Dang further challenges the district court's rejection of his request for reimbursement of the cost of obtaining an abstract of judgment for $7.50 and recording the abstract of judgment with the County Recorder's Office for $11.00. Dang did not

---

[13]Because there is no need to take judicial notice of U.S. inflation rates, we deny Dang's request to do so.

request the abstract of judgment expenses as part of his Bill of Costs pursuant to Federal Rule of Civil Procedure 54(b)(1) and Rule 54-3 of the Rules of Court for the Central District of California. Rather, after filing the Bill of Costs, Dang included these expenses as part of his fee request under § 1988.

**[15]** Under § 1988, the prevailing party "may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.' " *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quoting *Chalmers*, 796 F.2d at 1216 n.7). Such out-of-pocket expenses are recoverable when reasonable. *See id.* at 20; *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Here, Cross does not argue that the abstract of judgment expense is not one that would normally be charged to a fee paying client. Nor does he challenge its reasonableness. Rather, Cross points to the fact that Dang offers no explanation why this expense was necessary. Nonetheless, recording an abstract of judgment is a reasonable step in the enforcement of a judgment. Indeed, California law explicitly sanctions the recording of an abstract of judgment. *See* Cal. C.C. P. § 697.310(a); *see also* Fed. R. Civ. P. 69(a) (the procedure on execution of a writ to enforce a judgment for payment of money "shall be in accordance with the practice and procedure of the state in which the district court is held"). Further, it is an expense that would normally be charged to a fee paying client. Under these circumstances, Dang was entitled to recover the cost of obtaining and recording the judgment.

## IV.

We hold that the district court prejudicially erred in refusing to instruct the jury that punitive damages could be awarded if it found that Cross's acts that caused Dang's injuries were oppressively done. We therefore vacate the judg-

ment and remand for further proceedings on punitive damages.

We also vacate the attorney's fee award and remand Dang's request for fees and costs under § 1988 for further consideration consistent with this opinion.

VACATED and REMANDED.