dissenting in part:
I concur in the proposed memorandum disposition except with regard to the most important jury instruction, the one concerning whether the police used excessive force against Moore.
“[J]ury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading.” Hunter v. Cnty. of Sacramento, 652 F.3d 1225, 1232 (9th Cir.2011) (quoting Dang v. Cross, 422 F.3d 800, 804 (9th Cir.2005)) (internal quotation marks omitted). Because the excessive force instruction as likely understood by the jury was legally erroneous, I would reverse the verdict.[1]
Here is the instruction that was given:
*707 In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest and/or in defending himself or others and/or in interacting with arrested subjects. Thus, in order to prove an unreasonable seizure in this case, Mr. Moore must prove by a preponderance of the evidence that the Defendant officer(s) used excessive force when they took any of the following actions:
1) Used force and inflicted injuries upon Mr. Moore once he was in handcuffs at the scene;
2) Forcibly and unreasonable restrained Mr. Moore while a nurse took his temperature rectally, against Mr. Moore’s wishes, at the hospital;
3) Inserted a flashlight into Mr. Moore’s rectum at the hospital; and
4) The other present Defendant officer(s) failed to intervene to prevent other Defendants offieer(s) from committing any of the above described acts.
Under the Fourth Amendment, a police officer may only use such force as is “objectively reasonable” under all of the circumstances. In other words, you must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight.
In determining whether the Defendant officer(s) used excessive force in this case, consider all of the circumstances known to the officer(s) on the scene, including:
1.The severity of the crime or other circumstances to which the officer(s) were responding;
2. Whether Mr. Moore posed an immediate threat to the safety of the officer(s) or to others;
3. Whether Mr. Moore was actively resisting arrest or attempting to evade arrest by flight;
4. Whether Mr. Moore was uncooperative and resistive at the hospital;
5. The amount of time and any changing circumstances during which the Defendant officer(s) had to determine the type and amount of force that appeared to be necessary;
6. The type and amount of force used;
7. The availability of alternative methods to subdue Mr. Moore.
This instruction tacked together an instruction that the parties had agreed upon earlier, while Moore was represented by counsel, and part of a more general instruction submitted by the government. But it departed from those proposed instructions in at least two material respects:
First, the parties’ joint proposed instructions had included the following: “If Mr. Moore proves to you by a preponderance of the evidence that any Defendant officer[s] punched, struck, or hit Mr. Moore in any way at the scene after he had already been placed into handcuffs, then that officer violated Mr. Moore’s Fourth Amendment rights.... If Mr. Moore proves to you by a preponderance of the evidence that Defendant Officer Hembree inserted a flashlight into Mr. Moore’s rectum at the hospital, then Defendant Officer Hembree violated Mr. Moore’s Fourth Amendment rights.” The instruction given to the jury contained no such clear statements.
*708 Second, Defendants’ separate proposed instruction on excessive force had concluded with the following language: “[T]he parties have agreed that if Mr. Moore was punched or hit after he was placed in handcuffs, that such use of force was excessive and unconstitutional.” The instruction given to the jury left out that caveat.
Without these clarifying statements, the final instruction as given appears to state that even if the jury determined that the Defendant officer(s) had taken any of the four listed actions — that is, even if they: “[u]sed force and inflicted injuries upon Mr. Moore once he was in handcuffs at the scene”; “[forcibly and unreasonable restrained Mr. Moore while a nurse took his temperature rectally, against Mr. Moore’s wishes, at the hospital”; “[i]nserted a flashlight into Mr. Moore’s rectum at the hospital”; or “failed to intervene to prevent other Defendants officer(s) from committing any of the above described acts”— the jury could still find that the force was justified by the circumstantial factors enumerated in the latter half of the instruction, including the severity of the crime for which Moore was arrested or the fact that he was “uncooperative and restive at the hospital.”
So understood — which it most likely was, or else the whole part of the instruction beginning with “In determining” was excess — the instruction was legally erroneous. Once the arrest was accomplished, the listed factors could not have made actions such as the use of force to compel unwanted medical care or the insertion of a flashlight in Moore’s rectum “objectively reasonable.” Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). “[W]here there is no need for force, any force used is constitutionally unreasonable.” Headwaters Forest Def. v. Cnty. of Humboldt, 240 F.3d 1185, 1199 (9th Cir.2000), vacated on other grounds, 534 U.S. 801, 122 S.Ct. 24, 151 L.Ed.2d 1 (2001); cf. Guy v. City of San Diego, 608 F.3d 582, 589 (9th Cir.2010) (“[E]ven when police officers reasonably must take forceful actions in response to an incident, and even when such forceful actions are permissible at first, if the officers go too far by unnecessarily inflicting force and pain after a person is subdued, then the force, unnecessary in part of the action, can still be considered excessive.”). Moreover, the Fourth Amendment not only prohibits the use of excessive force, but “generally proscribes ‘unreasonable intrusions on one’s bodily integrity.’ ” Fontana v. Haskin, 262 F.3d 871, 878-79 (9th Cir.2001) (quoting Headwaters Forest Def., 240 F.3d at 1199). And “there can be no countervailing governmental interest to justify sexual misconduct.” Id. at 880 (internal quotation marks omitted). Furthermore, pretrial detainees have rights “to be free from unjustified intrusions to the body, to refuse unwanted medical treatment and to receive sufficient information to exercise these rights intelligently.” Benson v. Terhune, 304 F.3d 874, 884 (9th Cir.2002) (citation omitted); see also Ellis v. City of San Diego, 176 F.3d 1183, 1192 (9th Cir.1999) (denying qualified immunity to an officer accused of using excessive force in restraining an arrestee and forcibly inserting a catheter to extract a urine sample— an act the court described as a ‘“gross personal indignity’ ” (quoting Yanez v. Romero, 619 F.2d 851, 855 (10th Cir.1980))).
I thus cannot agree that if the jury found the events described in the instruction had occurred, it was entitled to find the absence of excessive force. Yet, the instruction was most likely read as allowing such a finding.
Nor can I conclude that any instructional error was harmless. Defendants argue that the jury instructions “properly set *709 forth the legal standards pertaining to excessive force,” but they do not argue that if the instruction was erroneous, the error was harmless. Consequently, the argument is waived. See Clem v. Lomeli, 566 F.3d 1177, 1182 (9th Cir.2009).
Even if it were not waived, a harmless error argument would fail. “An error in instructing the jury in a civil case requires reversal unless the error is more probably than not harmless.” Dang, 422 F.3d at 811 (quoting Caballero v. City of Concord, 956 F.2d 204, 206 (9th Cir.1992)) (internal quotation marks omitted). It is not more probable than not that the jury’s verdict resulted from factual determinations in favor of Defendants rather than from a misapprehension of law. See Gambini v. Total Renal Care, Inc., 486 F.3d 1087, 1093 (9th Cir.2007) (quoting Swinton v. Potomac Corp., 270 F.3d 794, 805-06 (9th Cir.2001)) (“[I]n reviewing a civil jury instruction for harmless error, the prevailing party is not entitled to have disputed factual questions resolved in his favor....”).
It is quite possible that the jury found Moore not believable. But we cannot so conclude without making our own credibility finding on grounds separate from the plausibility of the alleged excessive force incidents — e.g., on the basis of the implausible explanation Moore gave for his presence in the house where he was arrested. We would then have to apply our credibility determination to Moore’s account of the events underlying his excessive force claim. We may not do that. Instead, “we must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts.” United States v. Kranovich, 401 F.3d 1107, 1112-13 (9th Cir.2005) (quoting United States v. Sherwood, 98 F.3d 402, 408 (9th Cir.1996)) (internal quotation mark omitted); see also United States v. Vallejo, 237 F.3d 1008, 1021 (9th Cir.), amended on denial of reh’g, 246 F.3d 1150 (9th Cir.2001) (“[T]he credibility of the witness is a question precisely within the province of the jury.”).
I therefore would hold the excessive force instruction erroneous and not harmless.

. Although Defendants argue that Moore did not adequately object to the jury instructions in district court to preserve the issue for appeal, the majority reaches the merits of the claimed instructional error, so I do as well. Moreover, Moore did object to instructions that would permit the jury to find Defendants had committed the actions listed in the final excessive force instruction but nevertheless conclude there was no violation of Moore's constitutional rights. Even if Moore's objec *707 tions were deficient in terms of the plain language of Federal Rule of Civil Procedure 51, a formal objection is not required ‘‘[w]here the district court [was] aware of the party’s concerns with an instruction, and further objection would [have been] unavailing.” Voohries-Larson v. Cessna Aircraft Co., 241 F.3d 707, 714-15 (9th Cir.2001) (internal quotation mark omitted).