**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ROBERT E. HUNTER, D.V.M.;
HOWARD ELEY,
       *Plaintiffs-Appellants*,

v.

COUNTY OF SACRAMENTO; SHERIFF'S
DEPARTMENT, COUNTY OF
SACRAMENTO; LOU BLANAS,
SHERIFF; OFFICE OF THE DISTRICT
ATTORNEY, COUNTY OF
SACRAMENTO; JAN SCULLY; WILLIAM
KEVIN SOWLES; JOHN MCGINNESS,
SHERIFF;
       *Defendants-Appellees.*

No. 09-15288

D.C. No.
2:06-cv-00457-
GEB-EFB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, Jr., District Judge, Presiding

Argued and Submitted
October 7, 2010—San Francisco, California

Filed July 26, 2011

Before: Stephen Reinhardt and Marsha S. Berzon,
Circuit Judges, and Louis H. Pollak, Senior District Judge.*

Opinion by Judge Pollak

---

*The Honorable Louis H. Pollak, Senior United States District Judge
for the Eastern District of Pennsylvania, sitting by designation.

9579

**COUNSEL**

Gary W. Gorski (argued), Fair Oaks, California, and Daniel M. Karalash, Sacramento, California, for the plaintiffs-appellants.

Thomas A. Cregger (argued), Randolph Cregger & Chalfant LLP, Sacramento, California, for the defendants-appellees.

**OPINION**

POLLAK, District Judge:

Robert Hunter and Howard Eley, the plaintiffs in this § 1983 action, sought to prove at trial that they were subjected to excessive force while in custody at the Sacramento County Main Jail pursuant to the County's allegedly unconstitutional custom or practice of using excessive force at the Main Jail. The jury found in favor of the County, and the District Court denied plaintiffs' motion for a new trial. In this appeal, plaintiffs argue that the District Court erred by refusing to use certain jury instructions they requested. Because we agree that

the District Court erred, and that its error was prejudicial, we reverse the District Court's order and remand for a new trial.

I

Plaintiffs initiated this action on March 3, 2006, and filed their Second Amended Complaint ("Complaint") on August 22, 2006. The Complaint alleges that, on September 17, 2005, plaintiff Hunter was arrested for driving while under the influence. He was taken to the Sacramento County Main Jail ("Main Jail"), where he was placed in a detox cell with a clogged and overflowing toilet. The Complaint further alleges that when Hunter alerted several deputies of the Sacramento County Sheriff's Department about the toilet's condition, the deputies responded by throwing him to the floor and applying force that resulted in a fractured elbow, stretched tendons, and nerve damage. The Complaint also alleges that plaintiff Eley was an inmate at the Main Jail, and that on March 21, 2004, Eley had a verbal disagreement with a deputy sheriff, after which the sheriff shoved, slapped, and choked Eley without provocation.

Plaintiffs' Complaint named a number of defendants and asserted several causes of action. In its September 8, 2008 ruling on the defendants' summary judgment motion, the District Court dismissed all of plaintiffs' claims except for their *Monell*[1] claim against the County of Sacramento ("defendant" or "County"). Plaintiffs' *Monell* claim alleged that they were subjected to excessive force, in violation of their rights under 42 U.S.C. § 1983, pursuant to defendant's longstanding practice or custom of subjecting inmates at the Main Jail to excessive force.

---

[1]*See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (holding that a municipality may be sued as a "person" under 42 U.S.C. § 1983 when the municipality's "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" inflicts a constitutional injury).

In its ruling denying summary judgment on this claim, the District Court's opinion placed primary emphasis upon a declaration submitted by plaintiffs' expert, Lieutenant Twomey, a former employee of the Sacramento County Sheriff's Department ("Sheriff's Department"). Lt. Twomey declared that there were 40 to 50 "major incidents" of excessive force at the Main Jail from 2000 to 2005. Lt. Twomey also declared that officials in the jail repeatedly failed to investigate the incidents, discipline the guards, or take other action to address the problem. For example, no Internal Affairs investigation was opened after a detainee named Jafar Afshar filed a complaint alleging that he had been subject to excessive force in the Main Jail when a deputy grabbed him from behind and threw him backward, smashing his head onto the floor. A Sheriff's Department official later admitted that an investigation should have been opened but was not. Similarly, Lt. Twomey declared that, in his experience, an internal investigation should have been opened when inmate Mihaita Constantin suffered a fractured nose and hand after being thrown to the ground and having his wrists restrained by five deputies, none of whom were injured in the altercation. The Court found that all of this evidence created a material issue of fact as to whether the County had a practice or custom of using excessive force, despite the fact that the County had formal written policies prohibiting the use of excessive force.

On September 25, 2008, about a month and a half before trial, the District Court instructed the parties to submit proposed jury instructions. On October 14, plaintiffs and defendant both submitted proposed jury instructions. Plaintiffs offered 21 proposed instructions, 12 of which elucidated various ways in which a plaintiff may establish municipal liability under *Monell*. On October 31, the District Court issued its own set of proposed jury instructions, instructing the parties to submit any suggested modifications as soon as possible.

The instruction of central relevance to this appeal laid out the elements of a *Monell* claim for the use of excessive force

in violation of the Fourth Amendment ("*Monell* instruction"). The District Court's proposed *Monell* instruction read, in its entirety, as follows:

> Each Plaintiff alleges that the Defendant County of Sacramento violated his Fourth Amendment constitutional right against use of excessive force. To prevail on this claim each Plaintiff must prove by a preponderance of the evidence each of the following elements:

> First, that one or more of Defendant's employees used excessive force against Plaintiff in violation of the Fourth Amendment of the United States constitution.

> Second, that in so doing, Defendant's employee or employees acted pursuant to a longstanding practice or custom of Defendant.

> Third, that Plaintiff was injured; and,

> Fourth, that Defendant's longstanding practice or custom was so closely related to Plaintiff's injury that it was the moving force causing Plaintiff's injury.

Excerpts of Record ("ER") at 14. Both parties filed objections and proposed modifications to the District Court's instructions. The document filed by plaintiffs began as follows: "PLEASE TAKE NOTICE that Plaintiffs object to the proposed Jury Instructions proffered by the Court, and request the following modifications." In the body of the document, plaintiffs explained that they did "not object to [the *Monell* instruction] as written," but they "specifically request[ed] the following proposed instructions be provided as well, as they state the law in the Ninth Circuit accurately, and in this District." Plaintiffs then listed the following ten additional

instructions, all of which were taken from their earlier list of proposed instructions and addressed standards for liability under *Monell*.

> (1) The routine failure to follow a general policy can itself constitute an actionable custom.

> (2) Plaintiff can establish municipal liability against Defendant by proving that the excessive force was committed pursuant to a longstanding practice or custom which constitutes the "standard operating procedure" of the local governmental entity.

> (3) Regardless of whether the County has formal policies regarding the use of force, routine failure to follow a general policy can itself constitute an actionable custom.

> (4) Failure to properly investigate, like failure to discipline employees involved in incidents of excessive force, is evidence of and supports a finding that not only was it accepted, but was customary.

> (5) Plaintiff may also attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded.

> (6) Policy or custom may be inferred if, after the use of excessive force, the County of Sacramento took no steps to reprimand or discharge the deputy sheriffs, or if they otherwise failed to admit the deputy sheriffs' conduct was in error.

> (7) The County is liable for depriving Plaintiff of a federal right if it is determined it did an affirmative act, participated in another's affirmative acts, or

omitted to perform an act which it was legally required to do that causes the deprivation.

(9) Liability for an established custom can be imposed irrespective of whether official policy makers had actual knowledge of the practice at issue.

(11) Failure to properly investigate, like failure to discipline employees involved in incidents of excessive force, is evidence of and supports a finding excessive force was not only accepted but was customary.

(12) The extent and openness of excessive force supports an inference that managerial level employees should have known.

ER 35-37 (citations omitted).[2] Each of these instructions was accompanied by a citation to one or more cases providing legal support for the stated proposition.

The District Court thereafter issued a final set of jury instructions for use during trial. ER 8-11 (excerpting relevant instructions). The Court did not adopt any of plaintiffs' proposed supplemental instructions. Appellants' Br. at 6. Indeed, the District Court's order did not acknowledge that plaintiffs had filed supplemental instructions, or explain why it was not using any of those instructions. ER 8.[3]

The final instructions did reflect the County's suggestion that the definition of the term "practice or custom" used in Ninth Circuit Model Civil Jury Instruction 9.4 (2007) be

---

[2]The numbers for these instructions correspond to the numbers used when plaintiffs first submitted proposed instructions to the District Court on October 14, 2008.

[3]The court's entire order stated: "Attached are the closing jury instructions. The verdict forms filed October 31, 2008, will be used." ER 8.

added to the proposed *Monell* instruction. That definition specifies that " '[p]ractice or custom' means any permanent, widespread, well-settled practice or custom that constitutes a standard operating procedure of the defendant." Ninth Circuit Model Civil Jury Instruction 9.4 (2007) ("Model Instruction 9.4"). The court incorporated this definition in a separate instruction in its final set of jury instructions.

Trial began on August 4, 2008, and the District Court instructed the jury on August 12, 2008. The jury was given general verdict forms which asked whether each plaintiff had "prevail[ed] on his Fourth Amendment claim against the County of Sacramento" and, if so, what amount of damages was caused by the County. The jury returned a verdict in favor of the County and against both of the plaintiffs.

Plaintiffs filed a motion for a new trial on November 24, 2008, which argued, in relevant part, that the District Court had failed to instruct the jury on the law as proffered in plaintiffs' proposed additional jury instructions. The District Court rejected plaintiffs' retrial request on January 8, 2009, finding that it was "based on a one sentence conclusory argument which assumes Plaintiffs' proposed instructions were not considered before the jury instructions were finalized." ER 3. The court also concluded that plaintiffs did not show "that the instructions given failed to 'fairly and adequately cover the issues' tried." ER 4 (quoting *Duran v. City of Maywood*, 221 F.3d 1127, 1130 (9th Cir. 2000)). Plaintiffs filed a timely notice of appeal on February 9, 2009.

II

Plaintiffs object to the jury instructions used by the District Court on several grounds. Defendant argues that the instructions given were appropriate and that plaintiffs have waived their arguments concerning the instructions. We conclude that plaintiffs properly objected to the District Court's refusal to

use plaintiffs' supplemental *Monell* instructions, and that the District Court erred by declining to use those instructions.[4]

### A.

**[1]** We begin by addressing whether plaintiffs properly objected to the District Court's *Monell* instruction. Under Federal Rule of Civil Procedure 51, "[a] party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). An objection to a jury instruction " 'need not be formal,' " and a party may properly object by submitting a proposed instruction that is supported by relevant authority, so long as the "proffered language [is] 'sufficiently specific to bring into focus the precise nature of the alleged error.' " *Norwood v. Vance*, 591 F.3d 1062, 1066 (9th Cir. 2010) (quoting *Inv. Serv. Co. v. Allied Equities Corp.*, 519 F.2d 508, 510 (9th Cir. 1975)). If a party does not properly object to jury instructions before the district court, we may only consider "a plain error in the instructions that . . . affects substantial rights." Fed. R. Civ. P. 51(d)(2).[5]

---

[4]Because we vacate the judgment below based upon the inadequacy of the jury instructions used at trial, we do not reach plaintiffs' alternative argument that the District Court committed error during the jury's deliberations by refusing to provide a copy of a missing exhibit to the jury in response to a note from the jury. *See* Appellants' Br. at 4-5, 9-12.

[5]Traditionally, this court adhered to the strict rule that it would only review objections to jury instructions in a civil case if the party properly objected at the district court level. *See Voohries-Larson v. Cessna Aircraft Co.*, 241 F.3d 707, 713-14 (9th Cir. 2001) ("[W]e have consistently declared that there is no 'plain error' exception in civil cases in this circuit." (citing *Hammer v. Gross*, 932 F.2d 842, 847 (9th Cir. 1991) (en banc))). However, in 2003, Rule 51 was amended to add subsection (d)(2), which permits plain error review even when a party failed to properly object before the district court if the error affects substantial rights. *See* 9C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2558 (3d ed. 2008) ("The 2003 amendment . . . of Rule 51 codified the

**[2]** Plaintiffs have indeed made certain arguments for the first time in this appeal—arguments that we find unpersuasive.[6]

---

previous practice followed by most circuits that said that the appellate court may reverse for plain error in an instruction to the jury even if there had been no objection to it."). Accordingly, the 2003 amendment abrogated the rule set out in our pre-2003 decisions. Our post-2003 unpublished decisions following our earlier rule did not recognize that Rule 51 had been amended to permit plain error review. *See Reyna v. City of Portland*, 270 F. App'x 682, 686-87 (9th Cir. 2008) (unpublished); *Mosqueda v. County of Los Angeles*, 171 F. App'x 16, 17 (9th Cir. 2006) (unpublished).

[6]In their appellate brief, plaintiffs challenge the District Court's excessive force instruction. However, plaintiffs' filings in the District Court never challenged or proposed alternative language to the District Court's excessive force instruction. Accordingly, plaintiffs' objections in the District Court were not enough to "bring into focus the precise nature" of the arguments regarding the excessive force instruction that plaintiffs now make in this appeal. *Palmer v. Hoffman*, 318 U.S. 109, 119 (1943).

Plaintiffs must therefore establish that the excessive force instruction contained a plain error affecting substantial rights. Fed. R. Civ. P. 51(d)(2). Plaintiffs argue that the court's excessive force instruction was "confusing on its face" because the instruction was "not particularly relevant to an action which does not involve use of force during an arrest." Appellants' Br. at 13 (citing ER 10). However, the instruction never uses the word "arrest," and it specifically advises jurors to consider the "severity of the crime *or other circumstances* to which the officer was responding." ER 11 (emphasis added). By including "other circumstances," the instruction is broad enough to encompass episodes of excessive force occurring in a custodial setting. Moreover, the instruction takes into consideration factors relevant to determining whether excessive force was used by correctional officers, including the amount of force used, the availability of other methods to subdue the plaintiff, the amount of time the officer had to make her decision, whether the plaintiff posed an immediate threat to the officer, and whether the plaintiff was actively resisting the officer. ER 11.

Plaintiffs provide no support for their assertion that these factors are "not particularly relevant" in the custodial context. These factors are taken from Ninth Circuit Model Jury Instruction 9.22 (2007). The comment to Model Instruction 9.22 notes that these factors are drawn from the Supreme Court's Fourth Amendment precedents *Graham v. Connor*, 490

However, the plaintiffs did properly object to the District Court's proposed *Monell* instruction, to the extent that it did not go farther and failed to include a separate definition of practice or custom. In their objections to the District Court's instructions, plaintiffs stated that they did "not object to [the Court's proposed *Monell* instruction] as written," but they asked that the Court also use the ten instructions quoted in Part I of this opinion, which elaborate various ways in which a *Monell* plaintiff may prove a practice or custom. We find that the ground for plaintiffs' objection was made clear in their proposed instructions, which plaintiffs correctly, if inartfully, argued "state the law in the Ninth Circuit accurately, and in this District." *Id.* Under Rule 51, objections to jury instructions must "stat[e] distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). As the Supreme Court has noted, "objections to a charge must be sufficiently specific to bring into focus the precise nature of the alleged error." *Palmer v. Hoffman*, 318 U.S. 109, 119 (1943). In applying Rule 51(c) in *Voorhies-Larson*, we noted that a party objecting to a jury instruction may "put the court on notice by offering alternative instructions that were denied." 241 F.3d at 715 (citing *Gulliford v. Pierce Cnty.*, 136 F.3d 1345, 1348-49 (9th Cir. 1998)). Likewise, in our decision last year in *Norwood*, we held that a party sufficiently objected by proposing alternative instructions that "made the grounds for their position clear, citing relevant authority." 591 F.3d at 1066. In this case, the plaintiffs proposed their own jury instructions that defined and explained the practice or custom prong and referred to several of our leading cases. By submitting instructions that specifically focused on the prac-

U.S. 386, 397 (1989), and *Tennessee v. Garner*, 471 U.S. 1 (1985). As this court has noted, "*Graham* . . . explicates the standards applicable to a pre-trial detention excessive force claim in this circuit." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1197 (2002). Thus, the factors in the District Court's excessive force instruction were relevant, and plaintiffs have failed to show that using the instruction containing them was plain error.

tice or custom prong of the *Monell* test, the plaintiffs put the District Court on notice of the grounds for their objection.

It should be noted that the County's submission of the definition of practice or custom contained in Model Instruction 9.4 did not cure plaintiffs' objection. As will be discussed in the following section, the County's definition failed to make clear to the jury that the plaintiffs could prove that an unofficial practice or custom of excessive force existed at the Main Jail by pointing to inaction in the face of repeated instances of the use of excessive force by Main Jail employees. By contrast, the plaintiffs submitted instructions which explicitly stated that an unconstitutional practice or custom could be proven through evidence that incidents of excessive force were not investigated and their perpetrators were not disciplined. *See, e.g.*, ER 37 (Instruction No. 11: "Failure to properly investigate, like failure to discipline employees involved in incidents of excessive force, is evidence of and supports a finding excessive force was not only accepted but was customary." (citations omitted)). These very specific proposed instructions were sufficient to put the District Court on notice that the plaintiffs considered the County's proposed definition of custom or practice, taken from Model Instruction 9.4, to be incomplete and misleading. Thus, plaintiffs' pre-trial objection to the District Court's proposed *Monell* instruction was sufficient under Rule 51.

### B.

We now turn to the merits of plaintiffs' objection to the District Court's "custom or practice" instruction. Our jury instruction decisions have traditionally distinguished between errors in the "formulation" of a jury instruction, which we review for abuse of discretion, and a jury instruction's "misstate[ment of] the law," which we review de novo. *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009) (internal quotation omitted); *see also Dang v. Cross*, 422 F.3d 800, 804 (9th Cir. 2005). As our decision in *Nor-*

*wood* recognized, we engage in de novo review when a party challenges a "jury instruction as an incomplete, and therefore incorrect, statement of the law." 591 F.3d at 1066 (citing *Clem v. Lomeli*, 566 F.3d 1177, 1180-81 (9th Cir. 2009); *Dang*, 422 F.3d at 804-06).

We have repeatedly held that " '[j]ury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading.' " *Dang*, 422 F.3d at 804 (quoting *White v. Ford Motor Co.*, 312 F.3d 998, 1012 (9th Cir. 2002)). We have also recognized that a district court's " '[u]se of a model jury instruction does not preclude a finding of error.' "*Id.* at 805 (quoting *United States v. Warren*, 984 F.2d 325, 328 (9th Cir. 1993)). Rather, each party is " 'entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence.' " *Clem*, 566 F.3d at 1181 (quoting *Dang*, 422 F.3d at 804-05). However, if the "error in the jury instruction is harmless, it does not warrant reversal." *Dang*, 422 F.3d at 805 (citing *Tritchler v. Cnty. of Lake*, 358 F.3d 1150, 1154 (9th Cir. 2004)).

**[3]** In *Monell*, the Supreme Court held that municipalities may be held liable as "persons" under 42 U.S.C. § 1983, but cautioned that a municipality may not be held liable for the unconstitutional acts of its employees solely on a respondeat superior theory. 436 U.S. at 691. Rather, the Supreme Court has "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 694; *Pembaur v. Cincinnati*, 475 U.S. 469, 480-81 (1986); *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). In justifying the imposition of liability for a municipal custom, the Supreme Court has noted that "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so wide-

spread as to have the force of law." *Id.* at 404 (citing *Monell*, 436 U.S. at 690-91).

As noted above, the District Court's initial *Monell* instruction required each plaintiff to prove that (1) "one or more of Defendant's employees used excessive force against Plaintiff in violation of the Fourth Amendment"; (2) "that in so doing, Defendant's employee or employees acted pursuant to a long-standing practice or custom of Defendant"; (3) "that Plaintiff was injured"; and (4) "that Defendant's longstanding practice or custom was so closely related to Plaintiff's injury that it was the moving force causing Plaintiff's injury." ER 14.[7] However, the District Court's initial proposed instruction did not include a definition of the term "practice or custom." Both parties objected to this omission, with the plaintiffs submitting the ten instructions quoted in Part I of this opinion, and the County submitting the definition of practice or custom used in Model Instruction 9.4.

The District Court's final set of jury instructions adopted the definition taken from Model Instruction 9.4, which defines practice or custom as follows: " 'Practice or custom' means any permanent, widespread, well-settled practice or custom that constitutes a standard operating procedure of the defendant." ER 11. The series of qualifiers in this definition—"permanent," "widespread," "well-settled," and "standard operating procedure"—emphasize that a practice must be pervasive and of significant duration.

**[4]** This definition is certainly consistent with our *Monell* decisions, which have recognized that "[l]iability for improper custom may not be predicated on isolated or sporadic incidents" and that "[t]he custom must be so 'persistent and wide-

---

[7]Plaintiffs have not challenged the District Court's formulation of these four elements of *Monell* liability, which derive from Ninth Circuit Model Civil Jury Instruction 9.4 and are consistent with our caselaw. *See, e.g.*, *Trevino v. Gates*, 99 F.3d 911, 918-20 (9th Cir. 1996).

spread' that it constitutes a 'permanent and well settled city policy.' " *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 691); *see also Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008) (holding that municipal liability may be established "by showing 'a longstanding practice or custom which constitutes the standard operating procedure of the local government entity' " (quoting *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002))); *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003); *Henry v. Cnty. of Shasta*, 132 F.3d 512, 523 (9th Cir. 1997).

[5] While the definition of practice or custom in Model Instruction 9.4 is consistent with our *Monell* decisions, it is far from a complete statement of our caselaw. We have long recognized that a custom or practice can be "inferred from widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.' " *Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992), *abrogated on other grounds as recognized in Beck v. City of Upland*, 527 F.3d 853, 862 n.8 (9th Cir. 2008)); *see also Menotti*, 409 F.3d at 1147; *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986).[8] The plaintiffs submitted an instruc-

---

[8]These decisions recognize that *evidence* of inaction—specifically, failure to investigate and discipline employees in the face of widespread constitutional violations—can support an inference that an unconstitutional custom or practice has been unofficially adopted by a municipality. We have also recognized that in some circumstances a *policy* of inaction, such as a policy of failing to properly train employees, may form the basis for municipal liability. *See Waggy v. Spokane Cnty.*, 594 F.3d 707, 713 (9th Cir. 2010); *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010); *see also Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) ("In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.").

tion using language taken directly from our decision in *Gillette*. *See* ER 36 (Instruction No. 5: "Plaintiff may also attempt to prove the existence of a custom or informal policy with *evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded*." (citing *Gillette*, 979 F.2d at 1349; *McRorie*, 795 F.2d at 784) (emphasis added)). The plaintiffs also submitted a similar instruction that an unconstitutional custom could be inferred from the failure to investigate repeated instances of unconstitutional conduct. *See* ER 37 (Instruction No. 11: "Failure to properly investigate, like failure to discipline employees involved in incidents of excessive force, is evidence of and supports a finding excessive force was not only accepted but was customary." (citations omitted)). However, the District Court, without explanation, declined to use either of these instructions.[9]

**[6]** Plaintiffs had good reason to submit these instructions, because the theory they explain was key to their case. Their expert, Lt. Twomey, found that officials in the Main Jail repeatedly failed to investigate incidents of excessive force

---

[9]Our *Monell* decisions have also recognized that a "municipality may be liable for its custom 'irrespective of whether official policy-makers had actual knowledge of the practice at issue.' " *Navarro v. Black*, 72 F.3d 712, 714-15 (9th Cir. 1995) (quoting *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989)). The plaintiffs submitted an instruction regarding this principle that again used language from one of our decisions. *See* ER 37 (Instruction No. 9: "Liability for an established custom can be imposed *irrespective of whether official policy makers had actual knowledge of the practice at issue*." (citing *Thompson*, 885 F.2d at 1443-44; *Anthony v. Cnty. of Sacramento*, 898 F. Supp. 1435, 1452 (E.D. Cal. 1995)) (emphasis added)). The District Court declined to use this instruction without explanation. *See Clem*, 566 F.3d at 1181 ("A district court . . . commits error when it rejects proposed jury instructions that are properly supported by the law and the evidence."). However, because we reverse the judgment below based upon the instructions regarding evidence of failures to investigate and discipline, we need not determine whether omission of the actual knowledge instruction was erroneous, and, if so, whether the omission prejudiced the plaintiffs.

and to take disciplinary action against guards who used such force, despite the existence of an official policy prohibiting the use of excessive force.[10] These instructions were vital to plaintiffs' case, because the legal principle in plaintiffs' instructions—that evidence of a recurring failure to investigate and discipline municipal officers for constitutional violations can help establish the existence of an unconstitutional practice or custom—cannot be readily deduced from simply reading the definition of practice or custom in Model Instruction 9.4. *See* Model Instruction 9.4 (" 'Practice or custom' means any permanent, widespread, well-settled practice or custom that constitutes a standard operating procedure of the defendant."); *see also Norwood*, 591 F.3d at 1067 (observing that "juries are not clairvoyant" and will not know to follow a particular legal principle "unless they are told to do so"). Accordingly, in the context of this case the definition of practice or custom in Model Instruction 9.4 was "an incomplete, and therefore incorrect, statement of the law." *Norwood*, 591 F.3d at 1066; *see also Fikes v. Cleghorn*, 47 F.3d 1011, 1013 (9th Cir. 1995) (holding that jury "instructions must allow the jury to determine the issues presented intelligently"). Further, by stating that a practice or custom must "constitute[ ] a standard operating procedure of the defendant," Model Instruction 9.4 may well have encouraged the jury to disregard evidence that the County failed to investigate and punish the use of excessive force. We do not commonly speak of a failure to act as a "standard operating procedure." *See Dang*, 422 F.3d at 804 (noting that we have "stressed that jury instructions . . . must not be misleading" (internal quotation and alteration omitted)). For these reasons, the District Court's decision not to use the plaintiff's proposed instructions was in error.[11]

---

[10]It should be noted that plaintiffs' case did not rest solely on evidence of acts of omission. As described above in Part I, Lt. Twomey also provided evidence that, if credited, demonstrated that the use of excessive force at the Main Jail was widespread and persisted over several years.

[11]We note that some of the instructions submitted by plaintiff, such as Instruction No. 11, could be considered argumentative, and that several of

We also conclude that this error cannot be considered harmless. "We presume prejudice where civil trial error is concerned and the burden shifts to the defendant to demonstrate that it is more probable than not that the jury would have reached the same verdict had it been properly instructed." *Dang*, 422 F.3d at 811 (internal quotations and alterations omitted).

Plaintiffs hoped to establish a "practice or custom" sufficient to create *Monell* liability despite the fact that the County had submitted evidence that the Main Jail had a formal written policy barring the use of excessive force that was nominally in place at the time of the events in question in this case. ER 20. If credited, Lt. Twomey's testimony would have established that there were repeated constitutional violations at the Main Jail "for which the errant municipal officials were not discharged or reprimanded," *Gillette*, 979 F.2d at 1349, and that, in turn, could have supported an inference that an informal but widespread custom of using excessive force existed at the Jail. On the record before us, we find that such evidence might well have swayed the jury to reach a different result.

**[7]** Without the plaintiffs' proposed instructions, however, the jury would not have known whether to consider the evidence that numerous instances of excessive force at the Main Jail were never investigated and that their perpetrators were

---

plaintiffs' instructions are duplicative. However, "the fact that the proposed instruction was misleading does not alone permit the district judge to summarily refuse to give any instruction on the topic." *Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1017 (9th Cir. 2007). If a party's proposed instruction has brought an "issue . . . to the district court's attention," the court commits error if it "omit[s] the instruction altogether, rather than modifying it to correct the perceived deficiency." *Norwood*, 591 F.3d at 1067. Here, the relevant instructions on practice or custom, which included citations to our caselaw, were sufficiently clear to bring the issue to the court's attention.

not punished. Indeed, as discussed above, there is some risk that the jury, relying solely upon the definition of practice or custom in Model Instruction 9.4, would have thought it improper to consider such evidence at all. Consequently, we cannot conclude that it is more probable than not that the instructional error was harmless.

### III

**[8]** We hold that the District Court prejudicially erred in refusing to instruct the jury that, for purposes of proving a *Monell* claim, a custom or practice can be supported by evidence of repeated constitutional violations which went uninvestigated and for which the errant municipal officers went unpunished. We therefore vacate the judgment and remand for a new trial.

**VACATED AND REMANDED.**