**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 12 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| EXXONMOBIL CORPORATION, A New York Corporation, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> SOUTHERN CALIFORNIA EDISON COMPANY, A California Corporation, <br><br> Defendant-Appellee. | No.   16-56027 <br><br> D.C. No. 2:12-cv-10001-MRW <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Michael R. Wilner, Magistrate Judge, Presiding

Argued and Submitted November 6, 2017
Pasadena, California

Before:  TASHIMA and BERZON, Circuit Judges, and PAYNE,** District Judge.

ExxonMobil Oil Corporation ("ExxonMobil") appeals a judgment on the

verdict for Southern California Edison Company ("Edison") following a jury trial

on negligence and breach of contract claims related to several service interruptions

---

\*       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*       The Honorable Robert E. Payne, United States District Judge for the Eastern District of Virginia, sitting by designation.

at an ExxonMobil oil refinery for which Edison supplied electricity, arguing that the district court's final jury instructions did not properly account for Edison's knowledge of ExxonMobil's particular electricity needs at the refinery, as required by *Langley v. Pacific Gas & Electric Co.*, 41 Cal. 2d 655 (1953). Because we conclude that there was instructional error but it was harmless, we affirm.

1.      ExxonMobil did not waive its objection to the omission of any *Langley*-based instruction by failing to raise the issue at the parties' final jury instruction conference on February 24. ExxonMobil's repeated arguments to the district court about *Langley*-based instructions before that conference—in the joint disputed instructions filed by the parties on January 7, and at the parties' January 27 and February 23 conferences—show that further objection would have been a "pointless formality." *Chess v. Dovey*, 790 F.3d 961, 970 (9th Cir. 2015); *see also Medtronic, Inc. v. White*, 526 F.3d 487, 495 (9th Cir. 2008).

2.      ExxonMobil also did not invite any error when it submitted joint proposed instructions that became the district court's Instructions No. 5 and No. 8. A party invites error where it proposes an instruction *without* qualification. *See Gilchrist v. Jim Slemons Imps., Inc.*, 803 F.2d 1488, 1493 (9th Cir. 1986) ("A party who requests an instruction invites any error contained therein and, *absent an objection* before the instruction is given, waives appellate review of the correctness of the instruction.") (emphasis added); *cf. Sovak v. Chugai Pharm. Co.*, 280 F.3d

16-56027

1266, 1270 (9th Cir. 2002), *opinion amended on separate grounds*, 289 F.3d 615 (9th Cir. 2002) (district court's error in applying state law regarding waiver of right to compel arbitration not invited where, despite asserting that state law applied to motion, defendant based substance of its argument on federal waiver jurisprudence and relied on federal law). ExxonMobil, however, proposed Instructions No. 5 and No. 8 with the stated expectation that those instructions would be supplemented by a separate *Langley*-based instruction, which it also proposed. Thus, it preserved its reliance on *Langley* for appeal notwithstanding its consent to the narrower proposed instructions.

3.      The district court erred by giving incomplete instructions to the jury as to Edison's duty of care because the instructions given did not "fairly and adequately cover" the *Langley* principle that was central to ExxonMobil's theory of liability. *Gantt v. City of L.A.*, 717 F.3d 702, 706 (9th Cir. 2013) (internal quotations omitted). *Langley* held that a utility that has "knowledge of the particular needs of a customer . . . . is required only to act in a reasonable manner under the circumstances." 41 Cal. 2d at 661-62. Thus, "[i]t would not be unduly burdensome to a utility . . . to require it to make a reasonable effort to give notice to those customers who have informed it that they require notice to prevent serious loss in the event of an interruption in the power supply." *Id.* at 662. ExxonMobil proposed two instructions, Nos. 49 and 51, based on this holding.

3                                      16-56027

The district court did not err by not incorporating Instruction No. 49 because that instruction was not "supported by law" and did not "ha[ve] foundation in the evidence." *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009) (internal quotations omitted). *Langley* did not hold that that a utility must take affirmative steps "to prevent loss or damage . . . even when it was not responsible for the power failure itself" in every case "where it has knowledge of the particular needs of the customer," as Instruction No. 49 said, but only that it must do so where those steps are reasonable and requested by the customer. ExxonMobil did not make any requests similar to those made in *Langley* so that case does not support the broad principle set out in Instruction No. 49.

However, the district court erred in failing to instruct the jury about the role of a utility's knowledge of particular needs in the negligence analysis. By itself, Instruction No. 5 properly accounted for such knowledge because it stated the negligence standard broadly and did not "overemphasize" particular factors for the jury to consider. *Crespo v. Fireman's Fund Indem.Co.*, 318 F.2d 174, 175 (9th Cir. 1963). But we must review the instructions as a whole. *Lewy v. S. Pac. Transp. Co.*, 799 F.2d 1281, 1287 (9th Cir. 1986). Because Instruction No. 6 restated Tariff Rule 14, the jury could have been misled to believe that Edison could not be found negligent under Instruction No. 5 as long as it provided a continuous electricity supply and any outages were caused by things not within its control. But that

16-56027

conclusion is foreclosed by *Langley*, a point that could not be "readily deduced" by the jury. *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1235 (9th Cir. 2011). The lack of additional guidance on this point therefore "rendered the instruction[s] incomplete and misleading." *Norwood v. Vance*, 591 F.3d 1062, 1067 (9th Cir. 2010).[1]

4.    Nonetheless, the district court's error was harmless because it is more likely than not that the jury would have decided in Edison's favor if it were properly instructed. *Clem*, 566 F.3d at 1182. All three relevant factors—the nature of the instruction, the substance of the verdict, and the evidence adduced at trial—weigh in Edison's favor here. *See Caballero v. City of Concord*, 956 F.2d 204, 207 (9th Cir. 1992).

First, the district court's instructional error was minor. It erred by giving a separate instruction that tended to minimize one element that was implied in the standard of care instruction—a mistake similar to one that we previously held was harmless. *See Cancellier v. Federated Dep't Stores*, 672 F.2d 1312, 1316 (9th Cir. 1982) ("Unlike the instructions given in cases requiring reversal, which affirmatively stated an erroneous version of the law, or forbade the jury to consider what it properly should have considered, the trial judge's instruction here was

---

[1] Instruction No. 8, on the other hand, was not misleading. Based on that instruction's plain language, each party could emphasize or deemphasize Edison's compliance with industry custom and practice as compared to its knowledge of ExxonMobil's needs in explaining the reasonableness of Edison's conduct.

merely an unelaborated version of the correct standard.") (internal citations omitted). Moreover, ExxonMobil's counsel mitigated the effect of this error through its closing argument emphasizing Edison's knowledge.

Second, the verdict for Edison on both the negligence and breach of contract claims suggests that the jury found ExxonMobil's evidence unconvincing. ExxonMobil's assertion about the overlap between Edison's tort and contractual duties misreads *Langley*; that case does not impose a duty much beyond Tariff Rule 14 where a power failure is caused by something within a utility's control, as it requires the utility to exercise "reasonable diligence." *See White v. S. Cal. Edison Co.*, 25 Cal. App. 4th 442, 447 (1994) (interpreting *Langley* to mean that a utility has "a general duty to exercise reasonable care in the management of its personal and real property"). A *Langley*-based instruction would therefore only have had significant benefit to ExxonMobil if it was harmed by Edison's failure to exercise reasonable care after a power interruption that was outside Edison's control, in light of Instruction No. 6's statement that "[a] utility is not liable for an interruption . . . if the interruption . . . resulted from a cause not within its control." The November 2010, January 21, 2012, and October 2012 events all involved outages from causes that the jury likely found *within* Edison's control—the maintenance of the fence at the Mobil substation, the use of a certain recloser on a circuit breaker, and the washing of capacitor banks, respectively. The jury's verdict

for Edison on the contract claims for those events thus teaches that it would have reached the same result on the corresponding negligence claims even if instructed about Edison's knowledge of ExxonMobil's particular needs. *See Benigni v. City of Hemet*, 879 F.2d 473, 480 (9th Cir. 1988). In any case, for all the events, the parties' emphasis on Edison's knowledge at trial, noted above, would have had the same effect with respect to the "reasonable diligence" standard at the core of the contract claims.

Third, the evidence at trial indicates that a *Langley*-based instruction would have had little or no effect on the jury's liability determination for each of the four underlying events. As discussed, *Langley* requires a utility to take certain actions only where it has knowledge of a customer's particular needs that necessitate taking those actions to prevent power outages. 41 Cal. 2d at 661-62. With respect to the November 2010 event, the evidence established that Edison could have taken steps to minimize the risk of outages caused by foreign objects, and that Edison knew that the Mobil substation was susceptible to animal intrusion. However, no evidence indicated that Edison was aware of ExxonMobil's particular fence maintenance needs at the substation, or that Edison committed to any maintenance procedure there. With respect to the January 21, 2012 event, no evidence showed that Edison knew of ExxonMobil's particular needs concerning reclosers on certain circuit breakers. And, with respect to the October 2012 event, the evidence showed

that Edison was aware of the possibility of outages if it did not wash circuits near the ocean on a more frequent schedule. However, ExxonMobil cites no evidence contradicting testimony by Edison employees—as well as ExxonMobil's electrical engineering consultant—that the term "circuits" refers only to 66-kilovolt lines, and not to other substation equipment such as capacitor banks. ExxonMobil did not assert that Edison was otherwise aware of the need for a more frequent wash cycle for capacitor banks. Therefore, a *Langley*-based instruction would not have affected the liability determination as to these events because there was no evidence on which the jury could have found that Edison had any knowledge of ExxonMobil's particular needs in those contexts.[2]

As to the January 9, 2012 events, a properly instructed jury would not be likely to find Edison liable as to those events because Edison's knowledge was different from the *Langley* utility's knowledge. The evidence at trial established that Edison knew of ExxonMobil's need for faster primary protection relays and had committed to repairing those relays promptly to prevent outages because of the slower secondary protection relays. Nonetheless, Edison did not promptly repair one line's primary relay after it was disabled on January 7, nor did it notify

---

[2] Edison's arguments focus mostly on the evidence about causation and damages for each event. But it is inappropriate to consider that evidence in the harmless error analysis, both because much of that evidence is disputed, and because the jury's consideration of those issues may have been affected by the district court's instructional error as to Edison's duty of care. *Clem*, 566 F.3d at 1179.

ExxonMobil that the relay was disabled. The two January 9 faults then occurred while the line was protected only by its secondary relay. A *Langley*-based instruction would have allowed ExxonMobil to argue that Edison's failure to provide notice of the primary relay disabling was a breach of its duty of care given its knowledge of ExxonMobil's need for primary relay protection. Yet, unlike the *Langley* plaintiff, ExxonMobil cannot point to evidence that it ever requested such notice, that Edison agreed to provide such notice, or that Edison was aware of specific steps that ExxonMobil could take to prevent outages if it had such notice. *Langley*, 41 Cal. 2d at 658, 661-62. ExxonMobil's generalized, conclusory claims about the obvious need for notice and the possibility of it taking preventative measures based on that notice cannot cure these deficiencies; ExxonMobil does not point to, and we cannot find, evidence that would have supported these conclusory claims. As a result, even if it had been given a *Langley*-based instruction on this issue, the jury would likely not have decided this issue differently than it did with the district court's incomplete instructions. The district court's error was therefore harmless.

**AFFIRMED.**

9                                                                    16-56027