NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DEC 29 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| THE ESTATE OF CECIL ELKINS. JR.; CREASHA ELKINS, individually, as successor in interest to Cecil Elkins, Jr. guardian ad litem Valiecia Perez guardian ad litem Dylan Elkins; DEVIN ELKINS, individually and as successors in interest to Cecil Elkins, Jr.; CECIL ELKINS; TINA TERREL; VALIECIA PEREZ; DYLAN ELKINS, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> HIPOLITO PELAYO, <br><br> Defendant-Appellee, <br><br> and <br><br> CALIFORNIA HIGHWAY PATROL; COUNTY OF TULARE; TULARE COUNTY SHERIFF'S DEPARTMENT; TULARE COUNTY REGIONAL GANG ENFORCEMENT TEAM; CITY OF PIXLEY, <br><br> Defendants. | No.   22-16027 <br><br> D.C. No. 1:13-cv-01483-AWI-SAB <br><br> MEMORANDUM* |

Appeal from the United States District Court

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

for the Eastern District of California
Anthony W. Ishii, District Judge, Presiding

Argued and Submitted October 19, 2023
San Francisco, California

Before: BEA, CHRISTEN, and JOHNSTONE, Circuit Judges.
Dissent by Judge BEA.

Cecil Elkins Jr. ("Mr. Elkins") was shot and killed by Officer Hipolito Pelayo ("Officer Pelayo") while evading arrest. Mr. Elkins's estate and family ("the Elkinses") filed suit against Officer Pelayo, claiming that his use of deadly force violated the Fourth Amendment, the Fourteenth Amendment, and California state law. After a three-week trial, a jury unanimously returned a verdict for Officer Pelayo. The Elkinses appeal this verdict, arguing that the district court made several errors in its handling of the trial. We have jurisdiction under 8 U.S.C. § 1291, and we affirm.

1. The Elkinses argue that the district court violated our mandate in *Estate of Elkins v. Pelayo*, 737 F. App'x 830 (9th Cir. 2018) ("*Elkins I*")[1] by precluding them from presenting their negligent tactics claim at trial. We disagree. "We review de novo . . . the district court's compliance with our mandate." *Hall v. City of Los Angeles*, 697 F.3d 1059, 1066 (9th Cir. 2012) (citing *Snow-Erlin v. United States*, 470 F.3d 804, 807 (9th Cir. 2006)). While a lower court cannot "review [the

_____

[1] We deny Officer Pelayo's request for judicial notice as unnecessary.

2

mandate], even for apparent error, upon any matter decided on appeal, . . . [t]he opinion delivered by this court at the time of rendering its decree may be consulted to ascertain what was intended by its mandate." *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255–56 (1895) (citations omitted).

The Elkinses based their negligent tactics claim against Officer Pelayo on three pre-shooting acts: (1) deciding to arrest Mr. Elkins, (2) failing to use non-lethal force earlier in his attempt to stop Mr. Elkins, and (3) continuing pursuit as other officers set a perimeter. In *Elkins I*, we remanded "[b]ecause we conclude[d] that a reasonable jury could find it more likely than not that Elkins was *not* reaching for his waistband just before he was shot." 737 F. App'x at 831. The Elkinses' excessive force claims, arising from Officer Pelayo's actions at the moment deadly force was used, are analytically distinct from their state negligence claims arising from Officer Pelayo's pre-shooting tactics in this case.

The *Elkins I* memorandum stated that "Plaintiffs' state law claims are analyzed under the same standard of objective reasonableness used in Fourth Amendment claims." *Id.* at 833. State law claims subject to that standard include assault, battery, and violations of California Civil Code section 52.1.[2] California courts analyze negligence claims, such as the Elkinses' negligent tactics claim,

---

[2] *See, e.g.*, *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (assault and battery); *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) (Cal. Civ. Code § 52.1).

under a different standard. *Hayes v. Cnty. of San Diego*, 305 P.3d 252, 263 (Cal. 2013) ("[S]tate negligence law . . . is broader than federal Fourth Amendment law, which tends to focus more narrowly on the moment when deadly force is used." (citation omitted)). The genuine disputes of fact underlying our remand on Fourth Amendment grounds did not relate to, or undermine, the district court's factual findings concerning the pre-shooting negligent tactics claim the Elkinses advanced. *See Elkins I*, 737 F. App'x at 831–33.

Accordingly, the district court did not err by dismissing the Elkinses' negligent tactics claim. Prior to the first appeal, the parties fully briefed this cause of action, and the district court granted Officer Pelayo's motion for summary judgment on two grounds: (1) the operative complaint failed to plead a plausible claim for negligent tactics, and (2) the Elkinses' unsupported and speculative arguments for pre-shooting tactical negligence failed to establish a genuine dispute of material fact.

On remand, the district court considered the scope of *Elkins I* at length and concluded that our memorandum's Fourth Amendment rationale did not preempt further negligent tactics analysis. After considering the operative complaint and the evidence on summary judgment anew, the district court again determined that the Elkinses' negligent tactics claim was inadequately pleaded in the operative complaint and insufficiently supported on summary judgment. Because our

4

mandate did not foreclose further consideration of the negligent tactics claim, the district court appropriately precluded the Elkinses from pursuing it at trial.[3] *See United States v. Kellington*, 217 F.3d 1084, 1092–95 (9th Cir. 2000). The district court also did not abuse its discretion by later excluding certain opinions offered by the Elkinses' expert witness that concerned the negligent tactics claim. *See* Fed. R. Evid. 401.

2.  The Elkinses next challenge three evidentiary rulings as unfairly prejudicial. We review the district court's admission of evidence for abuse of discretion, *Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 943 (9th Cir. 2009), and conclude that the district court acted within its discretion in each instance.

First, the district court did not err by admitting testimony about the nature of Mr. and Mrs. Elkins's marriage during the liability phase of trial. This testimony related to the first element of Mrs. Elkins's Fourteenth Amendment claim— whether she had a protectable interest in her relationship with Mr. Elkins.[4] *See*

---

[3] The Elkinses forfeited any challenge to the district court's denial of leave to amend because they raised the issue for the first time in their reply brief. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

[4] This Court has not established whether spouses may bring a loss of companionship claim under the Fourteenth Amendment. *Peck v. Montoya*, 51 F.4th 877, 893 (9th Cir. 2022). Because the parties do not raise this on appeal, we express no opinion on the issue. *See Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986).

*Lehr v. Robertson*, 463 U.S. 248, 256–58 (1983). Because this was a merits issue, the district court appropriately allowed this evidence during the liability phase of trial rather than reserving it for the damages phase. In addition, because the district court only admitted the testimony on the basis that its probative value outweighed any potentially prejudicial effect, the district court did not abuse its discretion in admitting this evidence under Federal Rule of Evidence 403. *See Boyd*, 576 F.3d at 948.

Second, the district court did not abuse its discretion by admitting Mrs. Elkins's testimony about conversations she had with her husband and the police shortly before the shooting because they were probative of whether Mr. Elkins had a reason to evade arrest when he encountered Officer Pelayo. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). As above, the district court also adequately weighed the probative value of this evidence against potential prejudice to the Elkinses before allowing its admission. *See Boyd*, 576 F.3d at 948.

Third, the district court acted within its discretion in concluding that Officer Pelayo's prior use of force against another suspect did not cast light on his motive, intent, or credibility in this case. *See* Fed. R. Evid. 404(b). The district court also did not abuse its discretion in excluding evidence of the prior incident because its admission created a danger of unfair prejudice to Officer Pelayo, issue confusion, and a "mini-trial," which outweighed any probative value. *See* Fed. R. Evid. 403.

6

3.  The Elkinses argue that the district court committed reversible error by including an interrogatory on the verdict form, asking: "Immediately before [Officer] Pelayo fired his gun, did [Mr. Elkins] reach for his waistband?" The jury did not reach the interrogatory at issue because it did not find that Officer Pelayo used excessive force. We review de novo whether jury instructions accurately state the law, *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1232 (9th Cir. 2011), and for abuse of discretion a court's decision to submit special interrogatories to the jury, *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 521 (9th Cir. 1999).

The district court correctly instructed jury members to review the totality of circumstances at the time of Officer Pelayo's use of force, *see Graham*, 490 U.S. at 396, and included the interrogatory at issue to aid its qualified immunity determination. "[W]hen there are disputed factual issues that are necessary to a qualified immunity decision, [they] must first be determined by the jury before the court can rule on qualified immunity." *Morales v. Fry*, 873 F.3d 817, 824 (9th Cir. 2017) (quoting commentary to Ninth Circuit Model Civil Jury Instruction § 9.34 (2017)). In *Elkins I,* we concluded that, "because the record contains reasons to doubt whether Officer Pelayo actually saw Elkins reach for his waistband, the decision . . . should be left to the jury." 737 F. App'x at 833. Because this factual issue remained through trial and would inform any qualified immunity determination after trial, the district court acted within its discretion when it

7

decided to submit the question to the jury. *See Lam v. City of San Jose*, 869 F.3d 1077, 1086 (9th Cir. 2017).

**AFFIRMED.**



*Estate of Cecil Elkins Jr. et al v. Hipolito Pelayo* (22-16027)

BEA, Circuit Judge, dissenting:

My colleagues interpret our prior panel's judgment of reversal of the district court's summary judgment order in favor of Defendant-Appellee Pelayo as having included *only* claims they believe *could* be reversed consistent with the reasoning in the prior panel's memorandum disposition. The result: Pelayo prevails on Plaintiffs-Appellants' (the Elkinses') state law wrongful death claim.

This narrow reading of the prior panel's decision ignores its plain language. The language of the panel's memorandum disposition compels the conclusion that the district court's grant of summary judgment in favor of Pelayo was reversed *in toto*. As a result of the language of reversal, I would reverse the district court's dismissal of the Elkinses' state law wrongful death (negligence) claim because the district court failed to comply with our prior panel's mandate. Hence, I dissent.

I have no reason to doubt that the prior panel in *Estate of Elkins v. Pelayo*, 737 F. App'x 830 (9th Cir. 2018) (*Elkins I*), understood and intended the legal effect of the words it used in its ruling. *Elkins I* disposed of an appeal from the district court's grant of summary judgment in favor of Pelayo as to *all of the Elkinses' claims*—both state law and federal law—with an unqualified judgment of reversal. *See id.* at 833. The panel first determined that, "regarding Plaintiffs' Fourth Amendment claim, a reasonable jury could find on the evidence presented that

Elkins was not reaching for his waistband or that, even if he was, the use of deadly force in this case was excessive." *Id.* The panel then stated: "Plaintiffs' state law claims are analyzed under the same standard of objective reasonableness used in Fourth Amendment claims." *Id.* Accordingly, the panel "REVERSED and REMANDED" the district court's summary judgment determination in favor of Pelayo. *Id.*

The *Elkins I* panel may have misstated the applicable legal standard for the Elkinses' state law negligence-based wrongful death claim, as the majority points out. Notwithstanding this apparent error, however, the prior panel explicitly included this state law claim in its judgment of reversal when it referenced "Plaintiffs' state law claims" generally and without qualification. *Id.* Such language expresses no intention to exclude any of the claims that were before the *Elkins I* panel. I am therefore unable to accede to the majority's position that the district court's grant of summary judgment as to the wrongful death claim was not "expressly discussed and decided" in *Elkins I*. *See Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 951 (9th Cir. 2019).

When a Court of Appeals enters an unqualified judgment of reversal, the result is that the district court must vacate the decision appealed from. *See United States v. Perez*, 475 F.3d 1110, 1113 n.2 (9th Cir. 2007). Here, the district court was required to vacate the entry of summary judgment in favor of Pelayo as to all the

claims against him, federal and state. That the district court did not do. Instead, it reaffirmed its vacated summary judgment order as to the Elkinses' state law wrongful death claim when it granted Pelayo's pre-trial motion for partial judgment on the pleadings, which the district court construed as a motion in limine. The district court granted this motion after deciding that "the Ninth Circuit opinion [in *Elkins I*] did not make any rulings in its remand order regarding Plaintiffs' negligent wrongful death claim."

But the district court arrived at this conclusion only by drawing impermissible inferences from the *Elkins I* panel's apparently erroneous statement of law. In *Elkins I*, this Court stated that "Plaintiffs' state law claims are analyzed under the same standard of objective reasonableness used in Fourth Amendment claims." *Elkins I*, 737 F. App'x at 833. On remand, the district court scrutinized this Court's statement of the applicable legal standard, which standard the district court concluded "does not apply to negligence based claims," such that the district court found it "highly unlikely" the *Elkins I* panel meant what it said. In so scrutinizing a decision of this Court of Appeals, the district court flouted established Supreme Court and Circuit precedent. *See In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895) (with respect to mandate issued by appellate court, lower court "cannot . . . review it, *even for apparent error*, upon any matter decided on appeal") (emphasis added); *United States v. Kellington*, 217 F.3d 1084, 1094 n.11 (9th Cir. 2000) ("[A]

district court must carry out the mandate of a court of appeals, *even if the mandate was in error . . . .*") (emphasis added). The majority repeats the district court's mistake.

I conclude that the district court was without authority to second-guess the *Elkins I* panel's basis for its clearly stated conclusion that the district court's prior grant of summary judgment as to *all federal and state law claims* was reversed. Pelayo could have filed a petition for rehearing or petition for rehearing en banc of the prior panel's decision if he believed the *Elkins I* panel erred in its statement of the applicable legal standard for state law negligence causes of action. Pelayo did not petition for rehearing or rehearing en banc.

Respectfully, I dissent.